**UNITED STATES of America,**
**Appellee,**

v.

**Martin SWEIG, Appellant.**

**No. 267, Docket 71–1704.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 19, 1971.

Decided Jan. 12, 1972.

Richard Ben-Veniste, Asst. U. S. Atty., S. D. N. Y. (Whitney North Seymour, Jr., U. S. Atty., Peter F. Rient, Asst. U. S. Atty., on the brief), for appellee.

Samuel Dash (Paul T. Smith, Manuel Katz, Boston, Mass., on the brief), for appellant.

Before MOORE, HAYS and MULLI-GAN, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York, denying a motion pursuant to F.R.Crim.P. 35 to "correct a sentence imposed in a illegal manner . . . ."[1]

On July 7, 1970, a jury convicted Sweig on one count of perjury after a trial on fifteen counts arising from the alleged misuse of his position as administrative assistant to the Speaker of the United States House of Representatives. On September 3 he was sentenced by Judge Frankel to thirty months' impris-

---

1. F.R.Crim.P. 35 provides in full:

"The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction. The court may also reduce a sentence upon revocation of probation as provided by law."

onment and a fine of $2000.00. This court affirmed the conviction, United States v. Sweig, 441 F.2d 114 (2d Cir.), cert. denied, 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971), and we refer to that opinion for a full exposition of the facts of the case.

In the course of a lengthy statement at the original sentencing proceeding, Judge Frankel indicated that his deliberations were influenced in part by Sweig's failure to cooperate with government officials in their investigation of influence peddling, and by evidence at the trial, much of it admitted on counts of which Sweig was acquitted, showing that Sweig was part of "a picture of corruption of a very profound kind . . . ." As to Sweig's silence, the court recognized that cooperation could hardly be expected until Sweig's appeals were exhausted, and it invited a motion to reduce sentence when cooperation would no longer be prejudicial.[2] Sweig's

---

2. We here reproduce the trial court's comments virtually in full. In the robing room, Judge Frankel said:

"I realize that Mr. Sweig proposes to appeal the judgment to be entered today and that this imposes upon him certain necessities for silence that might not be as weighty with him if he were at the stage of a conviction that had become final. For that reason, and I will announce this in open court as well, this is a rare case, indeed the only one in my personal work where I will be disposed to emphasize that the sentence to be imposed will be subject to reconsideration when and if the judgment becomes final, and I will invite an application under Criminal Rule 35 for that purpose.

I make no promises, no representations and I hold out no hopes, but I do indicate with all candor that one of the things that troubles me in trying to appraise Mr. Sweig on the sentence to be imposed in this difficult case is his almost total silence, and I understand the reasons for it, but I think it presents a problem and it may lead to the imposition of a slightly, or perhaps even not slightly, heavier sentence than there might be if he felt able to come forward and talk about himself and the facts of this prosecution or the facts out of [sic] this prosecution arose."

In open court, the judge continued as follfollows:

"Now, Mr. Sweig, for a lot of reasons, all of them, so far as I know, good ones, from your point of view, I have not heard from you throughout this proceeding. I understand that you intend to appeal from this judgment of conviction, which is your right, and I understand that this prospect also makes it advisable in your judgment and that of your counsel that you continue the policy of silence about the facts of this case.

I mentioned to Mr. Smith in the robing room, and I now mention here to you, that this creates something of a problem. For example, in considering the degree to which you might have information about irregularities or corruption in the government, which was the subject of the investigation in which you became embroiled, or a subject of that investigation, in considering that, I am more or less required to take into account the responsible things stated by the government's representatives even beyond what is proved in evidence at a trial when I come to sentence. But even aside from that, you remember there was substantial evidence at the trial which indicated gross irregularities, misuse of government facilities, abuse of government trust, and whatever Mr. Smith has said about the counts on which you were acquitted, I think it is appropriate, and I state for the record the view that I [sic] not ignore those things in considering this delicate question of [s]entence. I don't know that I could ignore them if I tried, but I state explicitly that I am not ignoring them, and that the picture of collaboration between you and Mr. Voloshen is part of what runs in my mind now as I consider this tough question —tougher for you than for me, obviously —of your sentence.

    *     *     *     *     *

I don't usually talk at great length about sentences. Long talks are certainly of no help to the defendant at such a time, but there are a lot of people here and I think the conversations thus far have reflected the awareness of all of us that this is a case where there are competing concerns of a rather vivid nature in the community and there are those of us who have our separate responsibilities with this kind of miserable assignment and we owe a duty to let it be known, at least

argument is that Judge Frankel's use of these criteria in effect punished him for exercising his right against self-incrimination, and for crimes of which he had been acquitted by a jury.

These contentions are without merit. A sentencing judge has very broad discretion in imposing any sentence within the statutory limits, and in exercising that discretion he may and

roughly, what it is that impels us when we take the action we take.

I am of the view that I would be derelict if I did not impose a substantial prison sentence in this case, and I will, but I want to state the things that have received consideration in my thoughts leading to this judgment.

I told you I read all these letters and they say things that Mr. Smith has said and they say them eloquently and sincerely. I agree, as nearly as my judgment takes me, with the consensus that there is no serious threat Mr. Sweig will ever violate the criminal law again. I agree that he is not a danger to the community. I agree that the hope of rehabilitation is not very relevant in this case of this intelligent and competent man, because as far as his ability is concerned to take a useful place in the community, he doesn't need the prison facilities for that purpose.

So we are left with a question that is to you, Mr. Smith, irrelevant, the question of how we view this crime and how we appraise the need to deter people who might be disposed to commit such a crime in the future.

On that I am not in agreement with you, Mr. Smith, and I think it would be an affront to very serious interests in the community if we assigned a value of zero to those concerns.

I might say that having sat through the trial, I am convinced that this is a grievous case of perjury. I have noted Speaker's view, that as far as he knows from his personal acquaintance with Mr. Sweig he cannot believe that Mr. Sweig intentionally perjured himself. Of course we are all here bound by the contrary judgment of a unanimous jury instructed that it had to find wilful and knowing perjury beyond a reasonable doubt before it could convict. I only say that I am not in disagreement with that judgment.

Enough has been said, but I think it should be underscored because it affects the Court, about the nature of the setting in which this crime was committed. We had an investigation of a situation where it appeared that the property of the government, its resources, the power of high government officials was being misused at the instance of a man receiving pay for the exploitation of those things for his private resources.

We have had evidence of the exertion of influence, of favoritism, of arbitrary favors for people singled out on the sole ground that they had paid money to Voloshen. We had, in short, a picture of corruption of a very profound kind, of cynicism and of disregard of the fundamental values on which effective government should be based.

All of these things obviously could not have been known to the Speaker and the other people who have written letters on behalf of Mr. Sweig. They were known, they are known to the Court and they are part of the considerations on which I proceed today.

I have mentioned, finally, the necessary but difficult fact of your silence, Mr. Sweig, on the basic questions. Mr. Seymour has mentioned that things that the grand jury was trying to find out and that perhaps all of us would want to know, may have been blocked or concealed by your silence, and in at least one instance by your untruthful testimony.

There is a continuing interest in the disclosure of the truth about those things and the disclosure of the truth about your own situation in general, whether it concerns gifts from Mr. Bratti or anything else.

I realize, and counsel on both sides realize, that with your plan to appeal from this judgment it is advisable for you not to talk too much, and so when I now impose sentence on you I want to say that in this instance I emphasize that under the criminal rules if and when this judgment becomes final, after appeal, you have a right through your very able Mr. Smith to make application to the Court for reconsideration of this sentence in the light of circumstances as they may then exist or develop.

I hold out no promises or hopes, but I do say that if there comes a time when you are in a position, still subject to this conviction, to speak more freely, if you then do speak freely I would consider that a factor the Court would have to weigh very seriously in appraising any application for mitigation of sentence to be imposed today.

The sentence is on the count on which Mr. Sweig was convicted, a sentence to imprisonment for a term of 30 months and a fine of $2000."

should consider matters that would not be admissible at a trial. Williams v. Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959) (hearsay); Williams v. New York, 337 U.S. 241, 69 S. Ct. 1079, 93 L.Ed. 1337 (1949) (prior crimes for which defendant was not tried, and hearsay); United States v. Schipani, 435 F.2d 26 (2d Cir. 1970), cert. denied, 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971) (evidence obtained in violation of fourth amendment); United States v. Doyle, 348 F.2d 715 (2d Cir.), cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965) (charges dismissed without adjudication of merits). Appellant argues that his case is distinguishable because none of the other cases concerned with this issue involved the consideration of evidence on charges of which the defendant was *acquitted*. However, just as the sentencing judge may rely upon information as to crimes with which the defendant has been charged but not tried, see United States v. Doyle, *supra*, so here the judge could properly refer to the evidence introduced with respect to crimes of which defendant was acquitted. Acquittal does not have the effect of conclusively establishing the untruth of all the evidence introduced against the defendant. For all that appears in the record of the present case, the jury may have believed all such evidence to be true, but have found that some essential element of the charge was not proved. In fact the kind of evidence here objected to may often be more reliable than the hearsay evidence to which the sentencing judge is clearly permitted to turn, since unlike hearsay, the evidence involved here was given under oath and was subject to cross-examination and the judge had the opportunity for personal observation of the witnesses.

■ Appellant's self-incrimination argument is equally unpersuasive. Judge Frankel made it perfectly clear, particularly in denying the instant motion, that his intention was merely to leave the door open for a reduction of sentence if Sweig should subsequently be

able to show mitigating circumstances. The judge stated expressly the "universally known possibility" that cooperation with law enforcement officials would be entitled to consideration. This case is indistinguishable from United States v. Vermeulen, 436 F.2d 72 (2d Cir. 1970), cert. denied, 402 U.S. 911, 91 S.Ct. 1390, 28 L.Ed.2d 653 (1971).

The order of the district court is affirmed.