UNITED STATES of America, Appellee,

v.

Michael Witt McCORD, Appellant.

No. 670, Docket 71–2187.

United States Court of Appeals, Second Circuit.

Argued April 20, 1972.

Decided May 30, 1972.

George E. Wilson, Spec. Asst. U. S. Atty., Peter L. Truebner, Asst. U. S. Atty., Whitney North Seymour, Jr., U. S. Atty., for appellee.

Leon Friedman, Chester Mirsky, New York City, for appellant.

Before WATERMAN, HAYS and FEINBERG, Circuit Judges.

WATERMAN, Circuit Judge:

On September 17, 1971, the appellant, Michael Witt McCord, entered a plea of guilty in the United States District Court for the Southern District of New York to all three counts of an indictment charging him with violations of the Military Selective Service Act of 1967, 50 App., U.S.C. § 451 et seq. Count one charged that he, in violation of 50 App. § 462(a), unlawfully terminated the civilian employment to which he had been assigned after his Selective Service Board had classified him as a conscientious objector; the remaining two counts charged that, in violation of the same statute, he failed to possess his Selective Service Classification Card and failed to possess his Selective Service Registration Card. He was sentenced by Judge McLean to concurrent terms of one year imprisonment on each of the three counts. Appellant, on November 11, 1971, moved, pursuant to Rule 35, Fed.R.Crim.P. and 28 U.S.C. § 2255 and § 1651(b), for a reduction of the sentence. He sought to have the sentence of imprisonment vacated, and it was suggested to the sentencing judge that appellant be permitted to serve that one year sentence on probation upon condition that he perform one year of civilian work of national importance. Judge McLean denied the motion and McCord appeals from that denial.

Appellant's attack on the denial of his motion is two-fold. First, he argues that the district court's failure to grant him the sentence which he desires was an abuse of the discretion traditionally afforded to trial judges to determine the type and extent of punishment. Second, he contends that there are statistics to show that there has been an accepted sentencing procedure whereby Jehovah's Witnesses who are prosecuted for disobeying draft board orders to do civilian work of national importance are regularly granted probationary sentences by sentencing judges upon the condition that they perform the civilian work they would not do when ordered by draft boards, and that the existence of this procedure requires that other prosecuted violators, whose relevant beliefs are similar to those of Jehovah's Witnesses, should receive the same benefit. Inasmuch as Judge McLean did not offer appellant the same opportunity that appellant claims other judges have offered other sentenced conscientious objectors, he argues that he has been denied the equal protection of law guaranteed him by the U. S. Constitution and that his right to due process of law has been violated. We affirm the decision of the court below denying appellant's motion.

It is axiomatic that federal district judges are afforded vast discretion in the imposition of sentence and "that a sentence imposed by a federal district judge, if within the statutory limits, is generally not subject to review." United States v. Tucker, 404 U. S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592, 596 (1972), accord Gore v. United States, 357 U.S. 386, 393, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); United States v. Sweig, 454 F.2d 181, 183–184 (2 Cir. 1972); United States v. Jones, 444 F.2d 89, 90 (2 Cir. 1971); 2 C. Wright, Fed-

eral Practice and Procedure, § 588 at p. 576 (1969). Nevertheless, despite the extreme reluctance of appellate courts to interfere in matters best left to the sound discretion of the district court such as the type and extent of punishment imposed after a plea of guilty, it has happened that in rare instances, as pointed out by appellant, challenges to the denial of Rule 35 motions have been sustained upon appeal. In United States v. Tucker, *supra*, the Supreme Court remanded for consideration a case in which the sentence was "founded at least in part upon misinformation of constitutional magnitude." 404 U.S. at 447, 92 S.Ct. at 592, 30 L.Ed.2d at 596. In a recent case this court remanded after an appeal from the denial of a Rule 35 motion for the filing by the sentencing judge of a statement explaining his reasons for the denial when it was "not improbable that the initial sentencing process with respect to the valid counts was to some extent affected by the conviction on the far more serious count 1, which was illegally brought." McGee v. United States, 462 F.2d 243 (2 Cir. 1972). Moreover, as the appellant points out, there appears to be a growing body of precedent supporting appellate review of sentencing in the few instances where an appellate court is convinced that the district court has manifestly abused its discretionary power. Yates v. United States, 356 U.S. 363, 366–367, 78 S.Ct. 766, 2 L.Ed.2d 837 (1958); United States v. McCoy, 139 U.S.App.D.C. 60, 429 F.2d 739 (1970);

United States v. Daniels, 446 F.2d 967 (6 Cir. 1971), 2 C. Wright, Federal Practice and Procedure, § 533 at p. 451 (1969).

The maximum statutory penalties which Congress prescribed and which Judge McLean might have imposed for each of appellant's violations is five years imprisonment and a $10,000 fine. Hence appellant could have been sentenced to a total of fifteen years imprisonment and to $30,000 in fines. In view of this congressional concern it is obvious that the imposition of a one year sentence by the trial judge is not a manifest abuse of a trial court's discretion. The record demonstrates that when sentence was imposed Judge McLean fully considered all the circumstances of the case[1] and we cannot find the slightest hint of any abuse of discretion. Moreover, we decline to evaluate the sentence imposed here by comparing it to any claimed standard of lenience allegedly shown by other federal district courts in cases represented to be similar to the one before us.

Appellant's challenge to the denial of his motion for a reduction of sentence, however, does run deeper than the simple charge that Judge McLean abused his discretion. Appellant also contends that a "special sentencing procedure has been in force in this circuit and elsewhere in the country whereby Jehovah's Witnesses in exactly the same position as McCord are given the opportunity to escape confinement altogether by doing civilian work." It is McCord's position

---

1. When sentence was imposed Judge McLean stated:

> I have carefully considered this case. I have read every word of the documents that have been sent to me by the defendant's attorney, by other people.
>
> I feel very sorry for this defendant. I may say that I feel more sorry for his parents, but I hope you will appreciate I have a responsibility which I cannot overlook and this country cannot survive if every man is free to decide for himself which laws he is going to obey and which laws he is going to disobey. To permit that would be anarchy.

> This defendant deliberately and intentionally disobeyed the Selective Service Act with full awareness of the possible consequences. Whatever his motives may be and whatever he thinks his conscience dictates, this Court cannot condone such conduct.
>
> I have struggled with myself to decide upon the sentence and I have decided to impose a sentence which, I think, is very lenient.
>
> The sentence of this Court is that the defendant be imprisoned for a term of one year on each count for which he pleaded guilty, sentences to run concurrently.

that, although he is not a Jehovah's Witness, the mandates of his conscience are similar to those of Jehovah's Witnesses and that, like them, he can obey the order of a court to do civilian alternate service, but that he cannot conscientiously obey a similar directive of his Selective Service Board.

In support of the motion for reduction of sentence appellant handed the judge an affidavit of a reputable attorney that from 1967 to July 28, 1970 twenty one acknowledged Jehovah's Witnesses who had been prosecuted in the Eastern District of New York for Selective Service violations had been sentenced to terms of probation in lieu of prison upon the condition of the probation that they perform some form of alternative civilian work service.[2]

Hypothesizing that there has been a uniform sentencing procedure employed by sentencing judges when Jehovah's Witnesses have been found guilty of having refused to perform the alternative service their Selective Service Boards have ordered them to perform, appellant would have us take judicial notice that this hypothesis is a Second Circuit fact-pattern, and would have us conclude that he was unconstitutionally singled out for harsher treatment than the Second Circuit's hypothetical sentencing procedure permitted. He arrives at his claim of personal discrimination by speculating that he received a one year sentence because he is not a Jehovah's Witness or a conscientious objector on account of his religious beliefs, but is, rather, a conscientious objector within the meaning of the tests in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965) and Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970).

Indeed, a sentencing procedure adopted as binding upon a full bench of judges of a multi-judge district court which in fact discriminates against Welsh-type conscientious objectors in relation to religiously oriented conscientious objectors would be difficult to justify in light of the Fifth Amendment's guarantee against arbitrary and unreasonable distinctions. Appellant, however, has failed to convince us that there is a discriminatory sentencing procedure in this Circuit which would bind all judges to follow it in each and every case, and he has also failed to make any showing that, had he been a Jehovah's Witness, Judge McLean would have imposed the sentence which he suggests to the Court the Court should have imposed upon him.

The appellant's statistical research does, in fact, tend to show that many federal district judges acting within their broad discretionary powers have been increasingly lenient in the sentences they have handed down in Selective Service cases. The statistics also show the Jehovah's Witness violators have regularly been included in the group toward whom an increasing number of judges have shown a growing lenience. Certainly this does not prove the existence of a uniform federal judicial policy actuated by religious discrimination in favor of a particular religious sect. And, of course, there is not a scintilla of evidence to show that Judge McLean would have given McCord a different sentence if McCord had been a Jehovah's Witness instead of a Welsh-type conscientious objector.

Finally, we point out that McCord was not only charged with having unlawfully terminated his civilian employment after following it for a year but also charged with failure to possess his Selective Service Registration Card and failure to possess his Selective Service Classification card after deliberately divesting himself of them. He pleaded guilty to all three of these offenses and was sentenced to concurrent terms of one year upon each of the three counts. Judge

2. This affidavit was also before the court in Meyers v. United States, 446 F.2d 37 (2 Cir. 1971). See page 39. In *Meyers* our court affirmed an Eastern District judge's sentence of 3½ years of imprisonment.

McLean made a specific reference to that fact during the colloquy at the hearing on defendant's motion for a reduction of sentence and in his statement when denying the motion.[3] It would appear, therefore, that McCord is not in the same position as defendants prosecuted solely for refusing to obey Selective Service Board alternative work orders. His situation is not in any way comparable to those of other registrants who, while refusing to obey orders of their Selective Service Boards, have nevertheless not seen fit to refuse to carry the prescribed documents of identification.

Although it has been the practice in the Second Circuit not to review the propriety of sentences imposed by district judges if imposed within permissible statutory limits we have recognized here that sentencing procedures are not immune from scrutiny under the due process clause,[4] and so we have given full consideration to the points presented to us even though the sentence imposed in this case is well within the permissible limits.

Appellant requests us to order that appellant's sentence be vacated, but it has been suggested that we might remand to the district court for the purpose of having the sentencing judge review the material before him and of permitting the presentation to him of additional material, all as it might bear upon the constitutional issue of whether the present one year sentence of imprisonment is an unconstitutionally discriminatory one.

Relevant official and unofficial statistics offered as bearing upon this alleged discrimination were presented to the sentencing judge and have been presented to us. There is no merit in ordering such a remand.

HAYS, Circuit Judge (concurring in the result):

There is no occasion for this court to review the propriety of the sentence imposed in this case. We do not review sentences which are within permissible statutory limits (United States v. Sweig, 454 F.2d 181, 183–184 (2d Cir. 1972)), except in the extremely rare situation where the case is remanded for reconsideration of a sentence that has apparently been based upon misinformation. McGee v. United States, 462 F.2d 243 (2d Cir. 1972).

FEINBERG, Circuit Judge (dissenting):

This apparently simple appeal, which seems at first to be governed by the hoary rule that sentences are ordinarily not reviewable, actually raises disturbing issues of national importance. For what appellant Michael Witt McCord claimed in the district court and continues to claim before us is that the Selective Service Act is being administered unfairly in a most fundamental way. Appellant's charge is that one type of Selective Service offender—Jehovah's

---

3. Upon denying the Rule 35 motion Judge McLean stated as follows:

  As far as the defendant's constitutional point is concerned, it is my opinion that that is completely without merit. This man pleaded guilty to three different crimes, and the sentence, in my opinion, was a perfectly valid sentence.

  Now, insofar as the motion is addressed to my discretion and seeks to induce me to change my mind, I want to assure Mr. Mirsky that I did not overlook this point when this defendant was before me for sentence. Not only did Mr. Mirsky mention it in his argument, but the presentence report reported to me that the defendant had indicated, per-

haps one might think somewhat belatedly, that he was willing to work for the Legal Aid after all, provided that the Court directed him to do it, instead of the Selective Service Board. So the point was fully made and considered.

  I do not impose sentence in criminal cases lightly. I do it after full consideration. I did so in this case, in my opinion, under the circumstances of this case. The sentence which I imposed was a fair and just sentence; and I therefore decline to change it.

  The motion is in all respects denied.

4. Williams v. People of State of New York, 337 U.S. 241, 252, n. 18, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

Witnesses—gets the preferred treatment of probation in sentencing while others like appellant receive a jail sentence. At a time when we tell our young men to resort to the courts rather than to the streets to vindicate their claims based upon conscience, we cannot take such an accusation lightly. Because the district court did not treat this claim with the gravity it demands, I would remand for an evidentiary hearing and a resentencing.

The relevant facts on appeal can be stated briefly. Appellant is a conscientious objector. The sincerity of his views has been certified by his local draft board. Because of those views, however, he refused civilian work offered by his draft board, and was thereafter convicted of that offense upon a plea of guilty. Nevertheless, he has indicated a willingness to perform such work if ordered to do so by a judge, because, in his mind, he would not then be obeying the commands of military conscription. Although the distinction may seem fine to many of us, appellant apparently thought it important enough to undergo the rigors of a criminal prosecution. The distinction has also seemed sufficiently meaningful to impel many Jehovah's Witnesses in the last few years to take the same position in the district courts of the Eastern and Southern Districts. But, according to appellant, every single member of the latter group, *just because he was a Jehovah's Witness,* was given the opportunity to perform civilian work at the order of a judge, but appellant, who is not a Jehovah's Witness, was not so treated and was given a year in jail instead.

If true, these allegations raise grave issues of fairness and justice. If appellant were black and had charged that all whites in his position had been given probation in the Southern District *because they were whites,* we would give any sentence that sent appellant to jail the "most rigid scrutiny." See Korematsu v. United States, 323 U.S. 214, 216, 65 S.Ct. 193, 89 L.Ed. 194 (1944). Appellant's case raises the same basic questions. In the district court the Government took the position that disparity of treatment between Jehovah's Witnesses and others like appellant was justified because the refusal of Jehovah's Witnesses to obey a draft board order is based upon religious grounds and appellant's position is not. Thus, the Assistant United States Attorney opposing appellant's motion below argued as follows:

> Mr. McCord attempts to lump himself with the Jehovah's Witnesses. It's quite obvious that the Jehovah's Witnesses are an unusual problem, and the practice has been in this District, not exclusively, to allow them to complete their work. Their objection is based on religious grounds, very deep religious grounds. A Jehovah's Witness would rather be flogged and tortured to death, rather than obey the order of a sector of authority to serve. They serve only if it is imposed as a punishment of the Court.

> This is quite different from a situation, a case like Mr. McCord's, where his opposition is on intellectual and moral grounds. I think it is also a combination of the same naivete and intellectual arrogance for Mr. McCord to arrogate to himself all of the problems and concepts and traditions of the Jehovah's Witnesses in trying to demand from this Court that he be allowed to perform alternative service in a comparatively comfortable position as compared to his sentence which your Honor has given.

> *It is our position that there is absolutely no reason whatsoever whereby persons who are conscientious objectors who refuse to perform work should be equated in any way at all with the Jehovah's Witnesses.* [Emphasis added.]

In this court, the Government has apparently retreated from this position, as well it might. I can see no justification under United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and Welsh v. United States, 398

U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), for distinguishing by group among concededly sincere conscientious objectors on the basis of whether their beliefs are part of the doctrine of an organized religion.[1]

The major question in this case is whether appellant has shown sufficient facts to justify our intervention. He claims in this court that in the past few years in the Eastern District, 16 out of 16 Jehovah's Witnesses were given the probation denied him, and in the Southern District, at least three out of three, and probably more, Jehovah's Witnesses were so treated. A similar claim was made in the district court.[2] Even more significantly, the Government practically admitted in the district court that appellant's accusation was correct. Thus, as already indicated, the Government stated that:

> It's quite obvious that the Jehovah's Witnesses are an unusual problem, and the practice has been in this District, not exclusively, to allow them to complete their work.

Moreover, such a practice is not unusual. Other federal judges, both on the circuit bench and on the trial court, have referred to it.[3] Indeed, this court alluded to the possible existence of the practice in Meyers v. United States, 446 F.2d 37, 39 (2d Cir. 1971), in which similar arguments were made on appeal. In that case, however, the appellant was not a conscientious objector and had simply refused to report for induction, so that there was ample basis for distinguishing between him and a Jehovah's Witness. But in this case, there is no such distinction.

It seems clear to me that McCord has shown enough to warrant an evidentiary hearing on the question whether there is a practice in the Eastern and Southern Districts of so favoring Jehovah's Witnesses. This would include not just an examination of what the sentences have been in Selective Service Act cases involving that particular sect, but also what recommendations the Probation Office has made in such cases and in other conscientious objector cases not involving Jehovah's Witnesses, and, if there is a significant difference in the pattern of recommendations, whether there is a justifiable basis for it. If appellant's accusations turn out to be true, then the district judge should reconsider appellant's sentence and take that additional information into account. I do not for a moment even intimate that the treatment of Jehovah's Witnesses, if it is as alleged, is not sensible. But in those circumstances I would think that considerations of fair play would suggest that appellant's sentence be no harsher than those given to Jehovah's Witnesses. There is precedent, in this circuit and elsewhere, for asking the judge to reconsider the sentence given appellant. If the Probation Office has been following a practice of unjustifiably discriminating against certain types of Selective Service Act offenders in making its recommendations, then district judges, including the judge in this case, have received what amounts to "misinformation." See United States v. Tucker, 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed. 592 (1972); McGee v. United States, 462 F.2d 243, 245, (2d Cir. 1972), and cases collected therein; United States v. Malcolm, 432 F.2d 809,

---

1. This is not to say that questions of the intensity with which particular views are held may not be pertinent on sentencing, but they cannot be decided on a group basis. Moreover, the district judge apparently did not doubt the sincerity of appellant's views.

2. Apparently, the figures given in the district court for the Eastern District were that 21 out of 21 Jehovah's Witnesses were placed on probation.

3. See United States v. Daniels (I), 429 F.2d 1273, 1274 (6th Cir. 1970) (per curiam); United States v. Daniels (II), 446 F.2d 967, 969 (6th Cir. 1971), and cases cited therein; Solomon, Sentences in Selective Service and Income Tax Cases, 52 F.R.D. 481, 487 (1970). Cf. W. Gaylin, In the Service of Their Country—War Resisters In Prison 327, 336 (1970).

815–819 (2d Cir. 1970). Regardless of whether such a practice violates the Constitution, in the exercise of our supervisory power we should not tolerate it. See generally Frankel, Lawlessness in Sentencing, 41 U.Cin.L.Rev. 1 (1972).

Accordingly, I would remand for an evidentiary hearing and resentencing. At that time, the district court could also again consider whether the other two counts of the indictment, to which appellant also pleaded guilty,[4] justified a jail sentence for an admittedly sincere conscientious objector who was willing to perform alternative service if ordered to do so by a judge.

4. Both were based on McCord's mailing his draft cards back to Selective Service authorities, apparently as part of his decision not to cooperate with Selective Service.