29

UNITED STATES of America

v.

Lorenzo GONZALEZ, Modesto Anthony Caba, and Raphael Vasquez, Defendants.

Crim. No. 88–435.

United States District Court,
D. New Jersey.

Feb. 22, 1990.

Samuel A. Alito, Jr., U.S. Atty. by Arthur P. Zucker, Asst. U.S. Atty., Newark, N.J., for U.S.

Richard Coughlin, Asst. Federal Public Defender, Camden, N.J., for defendant Lorenzo Gonzalez.

Peter V. Ryan, West Orange, N.J., for defendant Modesto Anthony Caba.

Michael N. Pedicini, West Orange, N.J., for defendant Raphael Vasquez.

## OPINION

BROTMAN, District Judge.

Presently before the court is the formal objection of defendant Modesto Anthony Caba to the contents of the presentence report pursuant to Fed.R.Crim.P. 32(c)(3)(A). Specifically, the defense disputes the government's calculation of the

base offense level of 26, and urges the court to find that the proper base offense level under the United States Sentencing Guidelines (hereinafter "U.S.S.G."), codified at 18 U.S.C. § 3551 *et seq.* and 28 U.S.C. §§ 991–998, is Level 14. The significance of the dispute is that if the court adopts the defendant's view and holds that Level 14 is appropriate, defendant Caba must serve from 15 to 21 months in prison, in addition to the five year mandatory enhancement under 18 U.S.C. § 924(c)(1); by contrast, under the government's theory, defendant Caba will be required to serve a term of incarceration from 63 to 78 months, in addition to the mandatory five year enhancement.

## I. FACTS AND PROCEDURE

On December 8, 1988, a grand jury indicted defendant Caba along with two co-defendants, Lorenzo Gonzalez and Raphael Vasquez, for conspiracy to possess cocaine with intent to deliver, 21 U.S.C. § 846 (Count One), possession with intent to deliver 700 grams of cocaine, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Two), and the use or carrying of a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2 (Count Three). The period of the conspiracy alleged was from November 14, 1988 to December 7, 1988. All defendants entered pleas of not guilty to all charges.

Although it may seem unnecessary to review the evidence presented at trial, as the court has already reviewed it in determining that there was sufficient evidence to support the convictions, *United States v. Gonzalez,* 729 F.Supp. 1057 (D.N.J.1990) (denying defendants' motions for judgments of acquittal filed pursuant to Fed.R. Crim.P. 29(c)), defendant Caba's objection to the presentence report requires the court to review the evidence once more. Fed.R.Crim.P. 32(c)(3)(D)(i).

At the trial, which commenced on October 16, 1989, the government introduced the testimony of Detective Salvatore Frascino of the Drug Enforcement Agency ("DEA"), Fiodaliza Gabriel, DEA Agent Quinton Maddox, and DEA Agent John Gillespie. Their testimony indicated that Frascino, who was undercover, arranged to make several purchases of relatively small amounts of drugs from Gonzalez and Vasquez. Specifically, the government presented evidence that on November 16, 1988, Gonzalez and Vasquez arranged for a distribution of 49.2 grams of cocaine. This was not admitted as evidence of the underlying substantive offenses charged, but under Fed.R.Evid. 404(b). Frascino then arranged to purchase $14,000 worth of cocaine, to be delivered on December 7, 1988 at the home of Gabriel. While waiting for Frascino to arrive on the night of December 7, Caba commented that he could not wait long because he had to take care of the money. When Frascino arrived, he was taken into a back room and shown the cocaine. Caba remained in the front room. Frascino then began to go outside to his car purportedly to get the money. As he was leaving, Caba blocked his path until he said the cocaine was of good quality.

When he arrived outside, Frascino signalled to the agents to enter the apartment. Upon their entry and announcement that they were police, Caba pulled a gun from his waistband. The gun was loaded and had the safety in the off position. He was subdued as he began to point it at one of the agents.

It was the position of Gonzalez and Vasquez that they had entered into a conspiracy to sell drugs, but that Caba was not a part of the conspiracy and that they had no way of knowing that he had a gun in any event. Caba admitted having the gun, but denied any knowledge of or participation in the conspiracy to sell drugs. Each defendant filed a motion for judgment of acquittal at the close of the government's case, and each motion was denied. Thereafter, defendant Caba took the stand and testified that he had no involvement in the conspiracy to sell drugs, and denied having any knowledge that Gonzalez and Vasquez had drugs. On October 26, 1989, the jury returned a verdict finding defendant Caba guilty of Counts One and Three only, and finding Gonzalez and Vasquez each guilty of all three counts charged.

The court denied defendants' motions for judgments of acquittal and held that the evidence presented was sufficient as a matter of law to sustain the verdict. *United States v. Gonzalez*, 729 F.Supp. 1057 (D.N.J.1990).

The presentence report initially submitted to defendant calculates the base offense level with the 747.2 grams from the December 7, 1988 transaction included in the calculation. Caba maintains that to include in the sentencing determination the amount of cocaine involved in the December 7, 1988 transaction, the transaction involved in Count Two, for which Caba was acquitted, "smacks of fundamental unfairness" and triggers "at least a semblance of double jeopardy considerations."

## II. DISCUSSION

■ The court recognizes the apparent anomaly in holding Caba responsible at sentencing for the conduct for which the jury acquitted him; such a determination, however, neither presents a fundamental constitutional difficulty nor is it inconsistent with the purposes of the Sentencing Guidelines. As this court noted in denying defendants' motions for judgments of acquittal, "the jury acquitted Caba of the possession charge, for whatever reason...." *United States v. Gonzalez*, 729 F.Supp. at 1061. At no time did the court make any finding as to the quantum of evidence presented by the government as to Count Two of the Indictment as it related to Caba. Moreover, Caba does not dispute that an "[a]cquittal does not have the effect of conclusively establishing the untruth of all the evidence introduced against the defendant." *United States v. Bernard*, 757 F.2d 1439, 1444 (4th Cir.1985) (quoting *United States v. Sweig*, 454 F.2d 181, 184 (2d Cir.1972)). A verdict of acquittal demonstrates only a lack of proof beyond a reasonable doubt of all of the elements of the offense charged. *Id.*

In the Third Circuit, as in the Second, Fourth, and Eleventh Circuits, "a defendant's rights in sentencing are met by a preponderance of evidence standard." *United States v. McDowell*, 888 F.2d 285, 291 (3d Cir.1989). Accordingly, where there is a dispute as to the appropriate base level under the guidelines, the government must show by a preponderance of the evidence that Caba was involved in the possession of the 747.2 grams on December 7, 1988. *United States v. Williams*, 880 F.2d 804, 806 (4th Cir.1989). The jury found that the government did not establish beyond a reasonable doubt that Caba was guilty of the substantive offense. This finding does not preclude further review as to whether the government put forth evidence sufficient to satisfy the preponderance of the evidence standard.

■ The court is not hesitant to find that the evidence supports a finding by a preponderance of the evidence that Caba knew of and was involved in the December 7, 1988 transaction. The jury convicted Caba of conspiracy under Count One, which states:

> Between or or [sic] about November 14, 1988, and on or about December 7, 1988, at Newark, in the District of New Jersey, the defendants
> LORENZO GONZALEZ,
>    a/k/a "Tito,"
> MODESTO ANTHONY CABA, and
> RAPHAEL VASQUEZ
> knowingly and intentionally did combine, conspire, confederate and agree with each other and with others, to knowingly and intentionally distribute and possess with intent to distribute in excess of 700 grams of cocaine, a Schedule II narcotic drug controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).

The jury also convicted Caba for carrying a gun during and in relation to a drug trafficking crime, which the Indictment alleges occurred on or about December 7, 1988. Thus, the jury itself held Caba responsible for conduct involving the 747.2 grams of cocaine involved in the transaction of December 7, 1988. These convictions alone warrant a finding that the applicable base offense level is Level 26. *United States v. Roberts*, 881 F.2d 95, 104–107 (4th Cir. 1989).

■ Even accepting, however, the defendant's implicit argument that the only source of evidence as to the 747.2 grams of cocaine concerned the offense charged in Count Two, the court holds that the appropriate offense level is Level 26. Accepting the facts alleged in the counts of the Indictment for which Caba was convicted, the court's independent review of the evidence [1] also establishes that the government has shown by a preponderance of evidence that a base offense level of 26 is appropriate. Caba was a member of a conspiracy to sell drugs, and was present in the apartment on the day of the sale of the 747.2 grams of cocaine. The evidence at trial made clear that Caba did not surface as a member of the conspiracy until on or about December 7, 1988. This makes it much more likely than not that the drug trafficking crime in which Caba was involved was the transaction of December 7, 1988. Caba stated that he could not wait long because he had to take care of the money. This strongly suggests that Caba was waiting for the buyer's money. In addition, when the federal agents arrived to make the arrests, Caba pulled a gun. This is sufficient to show by a preponderance of the evidence that the sale of the 747.2 grams on December 7, 1988 is relevant conduct "for which the defendant would otherwise be accountable." U.S.S.G. § 1B1.3(a)(1). The court now finds that the government did show, by a preponderance of the evidence, Caba's involvement in the sale of the 747.2 grams of cocaine on December 7, 1988.[2]

Although Caba did take the stand and contest these facts, *cf. United States v. Isom,* 886 F.2d 736, 739 (4th Cir.1989) (upholding enhancement based on conduct for which defendant was acquitted in part because defendant did not dispute such facts), the court finds his testimony was not credible.

This result is not at odds with the underlying purpose of the Sentencing Guidelines. Although the Guidelines represent an attempt to move closer to "charge offense sentencing" and further from "real offense sentencing," *see United States v. Guerrero,* 863 F.2d 245, 248 (2d Cir.1988), the Sentencing Commission recognized that its solution was not a "pure" one for it contained a number of "real" elements:

> The Commission recognizes its system will not completely cure the problems of a real offense system. It may still be necessary, for example, for a court to determine some particular real facts that will make a difference to the sentence. Yet, the Commission believes that the instance of controversial facts will be far fewer; indeed, there will be few enough so that the court system will be able to devise fair procedures for their determination.

*See* Introduction and General Application Principles, U.S.S.G. Ch. 1, Part A, Introduction 4(a).

■ This case appears to present the rare situation where there is an underlying factual dispute relevant to the sentencing determination. The court concludes, however, that the Guidelines do not contemplate refusing to consider relevant conduct for which the defendant has been charged but acquitted. As the Third Circuit explained in the context of analyzing the extent of evidence that may be considered in determining whether to grant a departure, "[b]efore the guidelines were promulgated, a court was permitted to consider evidence on counts of which a defendant was acquitted in sentencing the defendant. ... [T]he guidelines, as we read them, indicate that the Commission intended to permit sentencing courts to continue to consider such information." *United States v. Ryan,* 866 F.2d 604, 609 (3d Cir.1989). The court holds that the same analysis applies to § 1B1.3 and § 3D1.2(d).

---

1. The court simply notes that in reviewing the evidence, unlike in a motion for judgment of acquittal, it does not view the evidence in the light most favorable to the government.

2. The court further notes that, even if the "reliable evidence" standard, *see United States v. Mocciola,* 891 F.2d 13, 17 (1st Cir.1989) (citing *United States v. Wright,* 873 F.2d 437, 441 (1st Cir.1989)), were employed, the same result would be reached.

The court recognizes that circuits have split on the question of whether a court may consider conduct for which the defendant has not been convicted under these sections. *Cf. United States v. Blanco,* 888 F.2d 907, 908–11 (1st Cir.1989) (collecting cases, and holding that district court could consider amounts of drugs not in counts of conviction); *United States v. White,* 888 F.2d 490, 496–500 (7th Cir.1989) (upholding portion of sentencing determination predicated on finding involving amount of cocaine for which defendant was not convicted but which was part of same course of conduct); *United States v. Restrepo,* 883 F.2d 781 (9th Cir.1989) (ambiguity in Guidelines and rule of lenity require that conduct not resulting in conviction may not be considered in determining sentence). Although the Third Circuit has not spoken on the application of this section of the Guidelines, most circuits have adopted the approach of the Seventh Circuit, and this court concludes that the Seventh Circuit's interpretation of the interplay between § 3D1.1 and § 1B1.3 of the Guidelines is more persuasive than that of the Ninth Circuit. As the Seventh Circuit explained, Section 1B1.3(a)(2)

> calls for inclusion of amounts in "offenses *of a character* for which § 3D1.2(d) *would* require grouping" (emphasis added). The subjunctive ("would") indicates a contrary-to-fact condition. When offenses are "of a character" described in § 3D1.2(d)—that is, when the base offense score depends on the quantity sold, stolen, etc.—and when these offenses "would" be grouped in the event of conviction, then the amounts are added whether or not there has been a conviction. Any doubt left by the text is resolved by Application Note 2, specifying that "multiple convictions are not required."

*White,* 888 F.2d at 497.

## III. CONCLUSION

In short, the court finds that the convictions for Counts One and Three provide independent bases for a determination that Level 26 is the appropriate base offense level. The Court further finds that the applicable sections of the Guidelines do not preclude review of the related conduct for which the jury did not convict Caba. Accordingly, the defendant's objections to the presentence report will be denied.

So ordered.

