******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* RICHARD LANGSTON
## (SC 20734)

McDonald, D'Auria, Mullins, Ecker and Alexander, Js.

*Syllabus*

The defendant appealed from the trial court's denial of his motion to correct an illegal sentence. The defendant had been convicted of the crimes of criminal possession of a firearm and robbery in the first degree, but acquitted of assault in the first degree, in connection with an armed robbery and a shooting. During the sentencing hearing, the prosecutor, relying on *United States* v. *Watts* (519 U.S. 148), requested that the sentencing court find, by a preponderance of the evidence, that the defendant had committed the assault, notwithstanding his acquittal of that charge, and consider that finding for purposes of sentencing. The sentencing court reviewed the underlying facts of the defendant's conviction, as well as the assault charge of which the defendant was acquitted, noted that it found the evidence to be telling and the witnesses to be credible, and commented on the nature of the alleged assault and its impact on the victim. The court specifically stated that the victim "was shot in the back of both legs by the defendant." The defendant received a lengthy total effective sentence, but the sentence for each count on which he was convicted fell within the statutorily prescribed range. In his motion to correct, the defendant argued that the sentencing court violated his rights under the federal and state constitutions when it considered the conduct underlying the assault charge, but the court rejected the defendant's claim and denied the motion. On appeal, the defendant claimed, inter alia, that the sentencing court's consideration of the conduct underlying the assault charge of which he was acquitted violated his federal and state constitutional rights to due process and to a trial by jury. *Held*:

1. The sentencing court's consideration of the conduct underlying the assault charge of which the defendant was acquitted did not violate his rights to a trial by jury or due process under the sixth and fourteenth amendments to the United States constitution, respectively:

Contrary to the defendant's argument that there was no binding precedent on whether the consideration of acquitted conduct for purposes of sentencing violates a criminal defendant's federal constitutional rights to a trial by jury or to due process, in *Watts*, the United States Supreme Court emphasized that a long line of cases had established the broad range of information a sentencing court can consider in imposing a sentence and held that a sentencing court is not prevented from considering conduct underlying a crime or crimes of which the defendant has been acquitted, provided that such conduct is proven by a preponderance of the evidence.

Moreover, since *Watts*, the United States Supreme Court has clarified that a sentencing court has discretion to consider a broad range of conduct, so long as the sentence imposed falls within the statutory range and the conduct does not serve as a basis to enhance that sentence, nearly every federal court of appeals has held that the consideration of acquitted conduct for purposes of sentencing does not violate a criminal defendant's constitutional rights, including the right to a trial by jury or to due process, provided that the sentence imposed does not exceed the statutory maximum for the conviction, and, in *State* v. *Huey* (199 Conn. 121), which predated *Watts*, this court emphasized the broad discretion a sentencing court has within the federal constitutional rubric to consider matters that would not be admissible at trial and held that, as a matter of federal due process, a sentencing court can consider information that merely has some minimal indicium of reliability.

In the present case, the sentencing court considered testimony and evidence adduced at a jury trial over which it presided, it had sufficient opportunity to observe and judge the credibility of the witnesses, although it did not explicitly state that the evidence on which it was

relying had some minimal indicium of reliability, such sworn testimony is exactly the kind of minimally credible evidence on which sentencing courts rely, and the sentencing court's findings as to the sufficiency of the evidence of the acquitted conduct were implicit in its explanation that it found the evidence to be telling and the witnesses to be credible.

Furthermore, the defendant could not prevail on his claim that neither *Watts* nor *Huey* was binding on this court, insofar as he argued that *Huey* did not explicitly address whether a sentencing court could consider acquitted conduct and that the holding of *Watts* was limited to the context of double jeopardy violations, as *Watts* explicitly stated that due process is generally satisfied when the acquitted conduct under consideration has been established by a preponderance of the evidence, and the rationale supporting *Watts* and *Huey* extended to a sentencing court's consideration of acquitted conduct, provided the requisite standards are met.

2. The sentencing court's consideration of the conduct underlying the assault charge of which the defendant was acquitted did not violate his rights to due process or to a trial by jury under article first, §§ 8 and 19, of the Connecticut constitution:

Notwithstanding the defendant's claim that the state constitution affords greater protection than the federal constitution with respect to a defendant's rights to due process and to a trial by jury in the context of a sentencing court's consideration of acquitted conduct, an analysis under the multifactor approach articulated in *State* v. *Geisler* (222 Conn. 672) for construing state constitutional provisions led this court to conclude that the state constitution does not prohibit the consideration of acquitted conduct for purposes of sentencing when the sentence is within the statutory range for the offenses of which the defendant has been convicted and the information relied on has a minimal indicium of reliability.

Specifically, the text of the relevant state constitutional provisions, related Connecticut precedent, and persuasive federal precedent all weighed heavily in favor of this court's determination that consideration of acquitted conduct for purposes of sentencing is not unconstitutional, as §§ 8 and 19 of article first of the Connecticut constitution are almost identical in substance to the corresponding provisions in the federal constitution, this court previously has emphasized that a sentencing court has broad discretion in imposing a sentence within the statutory limits and has held that the practice of commenting on conduct for which a defendant is acquitted does not rise to the level of a constitutional violation, the defendant cited no Connecticut authority supporting the opposite proposition, and every federal court of appeals that has addressed the issue has afforded sentencing courts the same wide latitude discussed by the United States Supreme Court in *Watts* in concluding that the consideration of acquitted conduct for sentencing purposes does not raise double jeopardy concerns.

Moreover, the factor regarding the persuasive precedents of other state courts, which follow diverse approaches with respect to the consideration of acquitted conduct for purposes of sentencing, did not strongly favor either the state's or the defendant's position, the factor regarding the historical insights into the intent of the framers of the state constitution favored the state's argument that the state constitution grants the same rights as the federal constitution, insofar as the state right to trial by jury developed in a similar manner to the right to a trial by jury under the federal constitution, and, although contemporary norms and public policy weighed in favor of the defendant's position, on balance, the factors favoring the state's position outweighed the concerns embodied in the contemporary norms and public policy factor.

3. This court declined the defendant's invitation to exercise its supervisory authority over the administration of justice to impose a rule prohibiting a sentencing court's consideration of conduct underlying a charge of which a defendant has been acquitted, but it emphasized that sentencing courts should exercise caution if they do rely on such conduct:

Under Connecticut's sentencing system, a sentencing court has wide latitude to sentence a defendant within the established statutory range for each offense of which a defendant is convicted, it may consider any evidence that has a minimal indicium of reliability in imposing a sentence within that range, and it is not permitted to make findings of fact relating

to aggravating factors or other factors that may place a sentence outside the statutory range.

Accordingly, limiting the information on which a sentencing court can rely would not provide any benefit and, instead, would discourage that court from articulating on the record a full and transparent basis for the sentence, which would prevent appellate courts from remedying those instances in which a sentencing court does rely on unreliable, inaccurate, or patently wrong information that falls short of a minimal indicium of reliability, and, as long as the evidence considered in this context satisfies the requisite standard of having a minimal indicium of reliability, it would not be appropriate for this court to interfere with a trial court's discretion in crafting proper sentences.

Nevertheless, this court emphasized that sentencing courts should undertake every effort to refrain from basing a sentence on facts that cast doubt, either directly or indirectly, on any aspect of a jury's verdict, and that it is neither necessary nor appropriate for a sentencing court to express or imply its disagreement with the jury's verdict, as such a practice may harm public confidence in the fairness of the judicial system and undermine the importance of the jury's role in fair adjudications, and, in the present case, although the sentencing court's declarative statement that the victim "was shot in the back of both legs by the defendant" was not unconstitutional or illegal, it was imprudent.

Argued November 17, 2022—officially released June 6, 2023

*Procedural History*

Substitute information charging the defendant with the crimes of assault in the first degree, criminal possession of a firearm, and robbery in the first degree, brought to the Superior Court in the judicial district of Hartford, where the case was tried to the jury before *Spada, J.*; verdict and judgment of guilty of criminal possession of a firearm and robbery in the first degree; thereafter, the court, *Graham, J.*, denied the defendant's motion to correct an illegal sentence, and the defendant appealed. *Affirmed.*

*John R. Weikart*, assigned counsel, with whom was *Emily Graner Sexton*, assigned counsel, for the appellant (defendant).

*Timothy F. Costello*, senior assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *Vicki Melchiorre*, former supervisory assistant state's attorney, for the appellee (state).

*Opinion*

McDONALD, J. This case requires us to decide whether, following a jury trial, a trial court can properly consider conduct related to a charge of which a criminal defendant was acquitted, when the court sentences the defendant on other charges of which the defendant was convicted. We conclude that the practice is permissible under established law. We also conclude, however, that trial courts should be extremely cautious if they rely on such conduct during sentencing.

The defendant, Richard Langston, appeals from the trial court's denial of his motion to correct an illegal sentence. On appeal, the defendant claims that the sentencing court's consideration of conduct related to a charge of which he was acquitted violated his rights to due process and to a trial by jury under the sixth and fourteenth amendments to the United States constitution and article first, §§ 8 and 19, of the Connecticut constitution. The defendant also urges us, in the absence of a constitutional violation, to use our supervisory authority to prohibit consideration of acquitted conduct during sentencing. Although we do not endorse that practice, we decline to reverse the trial court's denial of the defendant's motion because (1) a long line of both federal and state precedent has allowed significant latitude for what judges may consider during sentencing and has permitted sentencing courts to consider a wide range of conduct, including conduct related to acquitted charges, and (2) the sentence imposed by the sentencing court in this case was within the statutorily prescribed range for the counts of conviction. Accordingly, we affirm the trial court's denial of the defendant's motion to correct an illegal sentence.

The defendant was arrested in 1998 in connection with an armed robbery and a shooting. He was subsequently charged with assault in the first degree, criminal possession of a firearm, and robbery in the first degree. Following a jury trial, the defendant was acquitted of assault in the first degree but convicted of all the other charges. During the sentencing proceedings, the prosecutor requested that the sentencing court find, by a preponderance of the evidence, that the defendant committed the assault and consider that finding during the defendant's sentencing. In support of her request, the prosecutor cited the United States Supreme Court's decision in *United States* v. *Watts*, 519 U.S. 148, 117 S. Ct. 633, 136 L. Ed. 2d 554 (1997), which held that a sentencing court may consider acquitted conduct, so long as it is proven by a preponderance of the evidence, without running afoul of the double jeopardy clause of the United States constitution. See id., 154–55, 157. Defense counsel argued, in response, that the sentencing court should acknowledge and take into account the fact that the defendant was acquitted of the assault charge.

The sentencing court proceeded to review the factual underpinnings of the charges of which the defendant was convicted, as well as the alleged assault, and, notwithstanding the acquittal on the assault charge, commented at length on the assault—placing the defendant as the shooter—and emphasized the impact it had on the victim, Richard Middleton: "[T]he victim . . . turned about, started to walk away, and was shot in the back of both legs by the defendant. [The victim], to this day, carries one of the bullets in his leg. He is effectively crippled and denied from enjoying the full quality of his life. All because this defendant elected to fire a handgun for the sake of stealing $100 from an unsuspecting victim. Further, [the victim] has been denied the opportunity to pursue a meaningful vocational career. He is essentially unable to secure employment and must now, for the remainder of his life, be dependent on the public dole for his support and sustenance. [The victim] is currently on Social Security disability payments, and these will likely continue for the rest of his life. These payments, of course, are shouldered by the taxpayers of this country, and these payments will likely total in the hundreds of thousands of dollars. . . . We learned at trial that [the victim] underwent four days of hospitalization and major surgeries on both of his legs. He now requires, as a relatively young man, the use of a cane to walk. In effect, his life has been stolen from him." Specifically, the sentencing court noted that it found that "[t]he evidence was telling and the witnesses credible."

The court sentenced the defendant to fifteen years of incarceration for the robbery in the first degree conviction, and five years of incarceration, to run consecutively, for the conviction of criminal possession of a firearm. In accordance with the jury's findings, the court also sentenced the defendant to a five year consecutive term of imprisonment as a mandatory sentence enhancement for committing a class A, B or C felony with a firearm pursuant to General Statutes § 53-202k. The defendant received a total effective sentence of twenty-five years of incarceration.[1] The parties agree that each of the sentences was within the statutorily prescribed range for each of the offenses.

In 2021, the defendant filed the motion to correct an illegal sentence at issue in this appeal, in which he argued that the sentencing court violated his rights under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution when it considered conduct underlying the assault charge of which he was acquitted. The defendant argued that recent United States Supreme Court precedent had limited *Watts* and that the legal landscape on this issue had changed since *Watts* was decided. Following oral argument, the trial court denied the defendant's motion.

The trial court emphasized that the defendant's "sentence did not exceed the maximum allowed by law, nor was it imposed in an illegal manner," because, "[u]nder Connecticut case law at the time, the sentencing judge was entitled to consider the shooting of which the defendant was acquitted." The trial court further reasoned that *Watts* held that a sentencing court is not precluded from considering the conduct underlying any charges of which the defendant was acquitted, so long as it finds, by a preponderance of the evidence, that the defendant carried out that conduct. Furthermore, because the sentencing judge did not exceed the maximum allowable sentences, the trial court found no conflict with the federal constitution. Regarding the question of state law, the court relied on *State* v. *Huey*, 199 Conn. 121, 127, 505 A.2d 1242 (1986), for the principle that, as a matter of due process, any information that has "some minimal indicium of reliability" may be considered by the sentencing court as a basis for a sentence. The trial court reasoned that, because the sentencing judge had ample opportunity to observe the witnesses and to reach the conclusion that the evidence was telling and the witnesses were credible, he was in a proper position to impose the defendant's sentence.

The defendant appealed from the trial court's denial of his motion to correct an illegal sentence to the Appellate Court, and the appeal was transferred to this court. On appeal, the defendant advances two claims. First, the defendant claims that the sentencing court's consideration of conduct underlying a charge of which he was acquitted violated his rights to a trial by jury and to due process under the sixth and fourteenth amendments to the United States constitution, respectively. Second, he claims that the sentencing court's consideration of the same conduct violated his rights to due process and to a trial by jury under article first, §§ 8 and 19, of the Connecticut constitution.[2] The defendant also requests that, even if we conclude that his constitutional rights were not violated, we exercise our supervisory authority to create a rule prohibiting the consideration of acquitted conduct in sentencing decisions.

Before turning to the defendant's claims, we summarize the general principles applicable to a trial court's consideration of a motion to correct an illegal sentence. "[A] judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner." Practice Book § 43-22. "[A]n illegal sentence is essentially one [that] . . . exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. . . . In accordance with this summary, Connecticut courts have considered four categories of claims pursuant to . . . § 43-22. The first category has addressed whether

the sentence was within the permissible range for the crimes charged. . . . The second category has considered violations of the prohibition against double jeopardy. . . . The third category has involved claims pertaining to the computation of the length of the sentence and the question of consecutive or concurrent prison time. . . . The fourth category has involved questions as to which sentencing statute was applicable. . . . We have emphasized that, in order to invoke the jurisdiction of the trial court, a challenge to the legality of a sentence must challenge the sentencing proceeding itself." (Citation omitted; internal quotation marks omitted.) *State* v. *Myers*, 343 Conn. 447, 459–60, 274 A.3d 100 (2022).

"A sentence is imposed in an illegal manner when it is imposed in a way [that] violates [a] defendant's right . . . to be sentenced by a judge relying on accurate information or considerations solely in the record . . . . This principle emanates from the defendant's constitutional right to due process." (Citation omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Francis*, 338 Conn. 671, 679, 258 A.3d 1257, cert. denied,    U.S.    , 142 S. Ct. 292, 211 L. Ed. 2d 136 (2021). "[A] claim that the trial court improperly denied a defendant's motion to correct an illegal sentence is [typically] reviewed pursuant to the abuse of discretion standard." *State* v. *Tabone*, 279 Conn. 527, 534, 902 A.2d 1058 (2006). However, when a motion to correct an illegal sentence involves questions of law, such as the constitutional claims raised here, our review over those questions is plenary. See, e.g., *State* v. *Bischoff*, 337 Conn. 739, 745, 258 A.3d 14 (2021).

I

FEDERAL CONSTITUTIONAL CLAIM

We begin with the defendant's claim that the sentencing court's consideration of the conduct underlying his assault charge violated his rights to a trial by jury and to due process under the sixth[3] and fourteenth amendments to the United States constitution, respectively. The defendant argues that no binding precedent has decided whether the consideration of such conduct violates a criminal defendant's rights to due process and to a trial by jury, and that two recent United States Supreme Court cases provide support for his position. See *United States* v. *Booker*, 543 U.S. 220, 240 and n.4, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005); *Apprendi* v. *New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The state counters that we are bound by a long line of precedent on this question from both the United States Supreme Court and this court, which established that a trial court may properly consider acquitted conduct at sentencing. See *United States* v. *Watts*, supra, 519 U.S. 157; *State* v. *Huey,* supra, 199 Conn. 126. The state also argues that the two recent United States Supreme Court cases relied on by the

defendant are inapplicable to this case.

The principles governing the constitutionality of sentencing practices are well established.[4] In *Watts*, the United States Supreme Court addressed whether judges may consider acquitted conduct during sentencing. See *United States* v. *Watts*, supra, 519 U.S. 149. In that case, the police found two loaded guns and ammunition hidden in the home of the defendant Vernon Watts and cocaine in the home's kitchen cabinet. Id. The jury found Watts guilty of possessing cocaine with intent to distribute but not guilty of using a firearm in relation to a drug offense. Id., 149–50. Notwithstanding Watts' acquittal on the firearms charge, the sentencing court found, by a preponderance of the evidence, that Watts had possessed the guns in connection with the drug offense, and it considered that finding in its sentence. Id., 150. On appeal, the Supreme Court concluded that the sentencing court's consideration of the conduct underlying Watts' acquitted firearms charge did not violate his constitutional right against double jeopardy. See id., 154–55, 157. Relying primarily on prior case law and 18 U.S.C. § 3661 (1988),[5] the Supreme Court concluded that it was "convinced that a sentencing court may consider conduct of which a defendant has been acquitted." Id., 154; see also id., 149. The court emphasized the long line of cases that established the broad range of information a sentencing court may consider in its sentencing decisions. Id., 151–52; see, e.g., *Williams* v. *New York*, 337 U.S. 241, 247, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949) ("[h]ighly relevant—if not essential—to [a sentencing court's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics"); *Williams* v. *Oklahoma*, 358 U.S. 576, 585, 79 S. Ct. 421, 3 L. Ed. 2d 516 (1959) ("[i]n discharging his duty of imposing a proper sentence, the sentencing judge is authorized, if not required, to consider all of the mitigating and aggravating circumstances involved in the crime"); *Nichols* v. *United States*, 511 U.S. 738, 747, 114 S. Ct. 1921, 128 L. Ed. 2d 745 (1994) ("Sentencing courts have not only taken into consideration a defendant's prior convictions, but have also considered a defendant's past criminal behavior, even if no conviction resulted from that behavior. We have upheld the constitutionality of considering such previous conduct . . . ." (Citation omitted.)); *Witte* v. *United States*, 515 U.S. 389, 397, 115 S. Ct. 2199, 132 L. Ed. 2d 351 (1995) (same). The court reasoned that an acquittal is not proof that a defendant is innocent or that the jury rejected certain facts. See *United States* v. *Watts*, supra, 155. Rather, the court explained, an acquittal only indicates the presence of a reasonable doubt as to the defendant's guilt. Id. Furthermore, the court in *Watts* specifically held "that a jury's verdict of [not guilty] does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has

been proved by a preponderance of the evidence"; id., 157; and the court explained that the application of the preponderance of the evidence standard at sentencing "generally satisfies due process" and does not violate the double jeopardy clause. Id., 156; see also id., 154–55.

Since *Watts*, the United States Supreme Court has twice had occasion to address a sentencing court's discretion at sentencing. First, in *Apprendi* v. *New Jersey*, supra, 530 U.S. 466, the court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id., 490. The court made explicit, however, that "nothing in [the] history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." (Emphasis in original.) Id., 481. The court in *United States* v. *Booker*, supra, 543 U.S. 220, reaffirmed *Apprendi* and reiterated that "[w]e have never doubted the authority of a judge to exercise broad discretion in imposing a sentence *within a statutory range*." (Emphasis added.) Id., 233. Thus, both *Apprendi* and *Booker* make clear that a sentencing judge may consider a broad range of conduct, so long as the sentence falls within the statutory range and the conduct does not serve as a basis to enhance the sentence.

As we will explain in part II of this opinion, nearly every federal court of appeals has held that considering acquitted conduct at sentencing does not violate a criminal defendant's constitutional rights, including the right to trial by jury or due process, so long as the conduct has been proven by a preponderance of the evidence and the sentence imposed does not exceed the statutory maximum for the conviction. See, e.g., *United States* v. *Culver*, 598 F.3d 740, 752 (11th Cir.) (holding that defendant's argument that consideration of acquitted conduct violated due process clause and his right to trial by jury was "without merit"), cert. denied, 562 U.S. 896, 131 S. Ct. 336, 178 L. Ed. 2d 147 (2010); *United States* v. *Grubbs*, 585 F.3d 793, 799 (4th Cir. 2009) ("*Booker* did not change the sentencing court's ability to consider uncharged or even acquitted conduct during sentencing"), cert. denied, 559 U.S. 1022, 130 S. Ct. 1923, 176 L. Ed. 2d 392 (2010); *United States* v. *White*, 551 F.3d 381, 385 (6th Cir. 2008) ("[s]o long as the defendant receives a sentence at or below the statutory ceiling set by the jury's verdict, the district court does not abridge the defendant's right to a jury trial by looking to other facts, including acquitted conduct"), cert. denied, 556 U.S. 1215, 129 S. Ct. 2071, 173 L. Ed. 2d 1147 (2009). We find particularly persuasive one such case from the United States Court of Appeals for the Second Circuit. See, e.g., *Turner* v. *Frowein*, 253 Conn. 312, 341, 752 A.2d 955 (2000) ("[d]ecisions of the Second Circuit

Court of Appeals, although not binding on us, are partic- ularly persuasive" when resolving issues of federal law). In *United States* v. *Sweig*, 454 F.2d 181 (2nd Cir. 1972), a jury found the defendant guilty of one count of perjury but not guilty of the remaining counts. Id. During the defendant's sentencing proceeding, the judge indicated that "his deliberations were influenced in part by [the defendant's] failure to cooperate with government offi- cials in their investigation of influence peddling, and by evidence at the trial, much of it admitted on counts of which [the defendant] was acquitted, showing that [the defendant] was part of 'a picture of corruption of a very profound kind . . . .'" Id., 182. The defendant argued that the judge's deliberations and resulting sen- tence essentially punished him for crimes of which he had been acquitted. Id., 182–83. The Second Circuit held that the defendant's "contentions [were] without merit"; id., 183; and that "the judge could properly refer to the evidence introduced with respect to crimes of which [the] defendant was acquitted" because "[a]cquit- tal does not have the effect of conclusively establishing the untruth of all the evidence introduced against the defendant." Id., 184.

More generally, and more than a decade before *Watts* was decided, this court had occasion to consider, within the federal constitutional rubric, the range of informa- tion a trial court may rely on at sentencing. In *State* v. *Huey*, supra, 199 Conn. 121, we emphasized the broad discretion of judges at sentencing and noted that, "if a sentence is within statutory limits it is not generally subject to modification by a reviewing court." Id., 126. Although we did not specifically address the issue of acquitted conduct in that case, we noted that, in exercis- ing their broad discretion, sentencing judges have wide latitude to consider matters that would not be admissi- ble at trial. Id. Specifically, we held that, "[a]s a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability." Id., 127. We relied on the United States Supreme Court's decision in *Williams* v. *Oklahoma*, supra, 358 U.S. 584, as support for our conclusion that the sentencing court may conduct a broad inquiry into the "circumstances of the crime and [into] the convicted person's life and circumstance" and may consider "re- sponsible unsworn or out-of-court information," with- out running afoul of the fourteenth amendment. *State* v. *Huey*, supra, 127. Citing the decision of the United States Court of Appeals for the District of Columbia decision in *United States* v. *Campbell*, 684 F.2d 141, 154 (D.C. Cir. 1982), we emphasized that, "[a]s long as the sentencing judge has a reasonable, persuasive basis for relying on the information [that] he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion." *State* v. *Huey*, supra, 127. Significantly, we also cited *United States* v. *Sweig*, supra, 454 F.2d 184, for the proposition that this discre-

tion extended to consideration of acquitted conduct. See *State* v. *Huey*, supra, 126.

In *Huey*, in which the sentencing judge relied in part on conduct that was outside the scope of the crime to which the defendant had pleaded guilty, we declined to limit the information a sentencing judge could consider because "[t]o hold otherwise would be to adopt an unrealistic view of both the plea bargaining and sentencing processes, a view that would only deter judges from articulating their reasons for a particular sentence fully and prevent correction when the sentencing judge relied on information which was truly unreliable, inaccurate or patently wrong. Trial judges ought not be reprimanded for acknowledging on the record the impact of information they have gained in the plea bargaining or sentencing processes unless the use of such information confounds reason and a just result. . . . Accordingly, when cases of this nature are heard on appeal, we should review the record to ensure that there is a persuasive basis for the conclusion reached by the sentencing court. . . . There is no simple formula for determining what information considered by a sentencing judge is sufficiently reliable to meet the requirements of due process. The question must be answered on a [case-by-case] basis." (Citations omitted; internal quotation marks omitted.) Id., 127–28.

In the present case, the sentencing court considered the testimony and evidence presented by witnesses at a trial over which it presided. It had sufficient opportunity to observe and judge the credibility of such witnesses, and their sworn testimony is exactly the kind of minimally credible evidence that we anticipate sentencing judges will rely on. In fact, the sentencing judge specifically explained that he found that "[t]he evidence was telling and the witnesses [were] credible." Although the sentencing judge did not explicitly reference the quantum of evidence, his findings as to the sufficiency of the evidence he relied on was implicit in his explanation. Accordingly, we conclude that the sentencing court did not violate the defendant's right to trial by jury under the sixth amendment, or the defendant's right to due process under the fourteenth amendment, when it considered the conduct underlying the defendant's assault charge.[6]

The defendant, however, urges us to depart from our holding in *Huey* and the United States Supreme Court's holding in *Watts* because, he asserts, neither case is binding. He argues that *Huey* is not binding because, in that case, we addressed only whether a sentencing court may consider a defendant's denial of allegations and did not explicitly address whether a sentencing court may consider acquitted conduct. Furthermore, he argues that *Apprendi* and *Booker* confined the holding in *Watts* to the context of double jeopardy violations. We disagree.

Although *Watts* and *Huey* did not explicitly address the constitutional provisions or the conduct at issue in the present case, when viewed, in totality, with previous United States Supreme Court case law and more recent federal appellate case law, it is evident that the rationale supporting *Watts* and *Huey* extends to a sentencing court's consideration of acquitted conduct, so long as it meets the requisite standard. *Watts* also explicitly stated that due process is generally satisfied when the conduct has been established by a preponderance of the evidence. *United States* v. *Watts*, supra, 519 U.S. 156. Furthermore, we find *Huey* instructive with respect to our analysis in the present case, insofar as it created a standard for the breadth of information that a judge may consider during sentencing as a matter of due process, namely, any information that has a "minimal indicium of reliability." *State* v. *Huey*, supra, 199 Conn. 127.

The defendant also asserts that, notwithstanding the United States Supreme Court's holding in *Watts*, we should follow the principles articulated in *Apprendi* regarding the importance of the respective roles of juries and judges. Although we agree that *Apprendi* articulates important principles regarding the distinct roles of judges and juries, its holding centered on the concern that sentencing judges would use acquitted conduct to increase the penalty for a crime beyond the prescribed statutory maximum. See *Apprendi* v. *New Jersey*, supra, 530 U.S. 491–97. Because the sentence imposed in the present case was within the statutory ranges for the counts of conviction authorized by the jury, our holding does not run afoul of the principles articulated in *Apprendi* and *Booker*. Indeed, Connecticut sentencing practices do not permit the sentencing judge to depart from the range authorized by the jury's verdict. Our statutes clearly define the requisite sentencing ranges for various crimes or enhancements. See, e.g., General Statutes § 53-202k (mandating five year enhancement for certain felonies committed with firearm); General Statutes § 53a-28 (a) ("every person convicted of an offense shall be sentenced in accordance with this title"); General Statutes § 53a-35a (setting forth sentencing ranges for felony convictions). Within that prescribed range, judges then have broad discretion to determine the sentence. See, e.g., *State* v. *Johnson*, 316 Conn. 34, 40, 111 A.3d 447 (2015). Therefore, when a sentencing court considers acquitted conduct, the jury's role is not infringed on as long as the sentence imposed does not exceed the statutory maximum. The jury is the sole fact finder, and its verdict on statutory offenses establishes the requisite statutory sentencing range within which the judge has broad discretion to sentence. See id.

## II

## STATE CONSTITUTIONAL CLAIM

We next address the defendant's claims that the sentencing court's consideration of acquitted conduct violated his state constitutional rights to due process and to a trial by jury under article first, §§ 8 and 19, of the Connecticut constitution. The defendant argues that, when reviewed under the factors articulated in *State* v. *Geisler*, 222 Conn. 672, 685, 610 A.2d 1225 (1992), our state constitution affords greater protection than the federal constitution. The state counters that we have previously concluded that consideration of acquitted conduct does not violate the state constitution and that the state constitutional protections of the rights to due process and to a trial by jury are the same as those of the corresponding federal rights.

As the state correctly points out, this court reviewed a similar claim in *State* v. *Pena*, 301 Conn. 669, 22 A.3d 611 (2011). In *Pena*, the jury found the defendant guilty of carrying a pistol without a permit and criminal possession of a firearm but not guilty of murder and the lesser included offense of manslaughter in the first degree with a firearm. Id., 671–72. During the sentencing proceeding, the trial court considered remarks made by the victim's family and other evidence related to the murder charge of which the defendant was acquitted. See id., 671, 678–79. On appeal, the defendant argued that "the trial court's reliance on this information deprived him of his state constitutional rights to due process and trial by jury." Id., 682. Relying on *Huey*, we disagreed with the defendant and applied the "minimal indicium of reliability" standard articulated in *Huey*. (Internal quotation marks omitted.) Id., 683. We concluded that the evidence relied on by the trial judge at sentencing—including the facts underlying the murder charge of which the defendant was acquitted—satisfied this standard and that the judge's reliance on the acquitted conduct did not run afoul of our state constitution. See id.

Although we ultimately agree with our holding in *Pena*, the defendant correctly notes that neither *Pena* nor *Huey* properly analyzed a claim that our state constitution affords greater protection than the federal constitution in this area under the factors articulated in *State* v. *Geisler*, supra, 222 Conn. 685. Instead, *Pena* relied on *Huey*, which addressed only a federal constitutional challenge to the defendant's sentence. See *State* v. *Pena*, supra, 301 Conn. 680–82. As such, although *Huey* and *Pena* both indicate[7] that the consideration of acquitted conduct at sentencing does not offend the federal constitution, that conclusion is not dispositive of the defendant's claim under our state constitution. See, e.g., *State* v. *Skok*, 318 Conn. 699, 708, 122 A.3d 608 (2015) ("federal constitution establishes a minimum national standard for the exercise of individual rights and does not inhibit state governments from affording higher levels of protection for such rights" (internal quotation marks omitted)).

Given the importance of the question, we find it necessary to engage in a more robust consideration of this state constitutional claim in the present case. "In determining the contours of the protections provided by our state constitution, we employ a multifactor approach that we first adopted in *Geisler*. The factors that we consider are (1) the text of the relevant constitutional provisions; (2) related Connecticut precedents; (3) persuasive federal precedents; (4) persuasive precedents of other state courts; (5) historical insights into the intent of [the] constitutional [framers]; and (6) contemporary understandings of applicable economic and sociological norms [otherwise described as public policies]." (Internal quotation marks omitted.) Id.; see also *State* v. *Geisler*, supra, 222 Conn. 685.

We begin with the first factor—the text of the relevant constitutional provisions. The defendant argues that the sentencing court violated his rights to due process and to a trial by jury under article first, §§ 8 and 19, of the Connecticut constitution. Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him . . . and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ." Section 19 of article first provides: "The right of trial by jury shall remain inviolate." These provisions of our state constitution are almost identical in substance to their federal counterparts. In fact, we have previously concluded that the "the text of the due process . . . [clause] in article first, § 8, of our state constitution . . . is not materially different from the corresponding [provisions in] the federal constitution." (Citation omitted.) *State* v. *Purcell*, 331 Conn. 318, 344–45, 203 A.3d 542 (2019). Although article first, § 19, as amended, provides some additional express rights beyond those provided by the federal constitution; see *State* v. *Jose A. B.*, 342 Conn. 489, 509–11, 270 A.3d 656 (2022) (discussing guarantee for peremptory challenges of jurors under article first, § 19, of Connecticut constitution, as amended by article four of amendments, that is not included in its federal counterpart); those differences do not apply here. Accordingly, under the first *Geisler* factor, the similarities of article first, §§ 8 and 19, of the Connecticut constitution to the corresponding provisions in the federal constitution support the state's argument that our state constitution does not provide any additional protection beyond that of the federal constitution in this instance.

Notwithstanding the similarities, the defendant argues that the term "inviolate" in article first, § 19, of our state constitution is a strong term used to indicate an

intention to protect against "any attempts to substantially impair a party's right to have issues of fact decided by [a] jury." We agree that the language of the state constitution is intentionally strong and reflects the great importance of the jury right in Connecticut. The fact remains, however, that the sentencing court's conduct did not impact the defendant's right to have his guilt determined by a jury. The defendant was afforded a full and fair trial, pursuant to which the jury considered the evidence and found him guilty of the charges for which he was sentenced within the statutorily authorized ranges. Although the sentencing court considered the facts underlying the acquitted charge, the sentence ultimately imposed by the court did not exceed the permissible statutory range for the crimes of which the defendant was convicted.

The second *Geisler* factor instructs us to consider related Connecticut precedent. As we explained in part I of this opinion, in *Pena* and *Huey*, we concluded, on similar records, that "[a] sentencing judge has very broad discretion in imposing any sentence within the statutory limits and in exercising that discretion he may and should consider matters that would not be admissible at trial." (Internal quotation marks omitted.) *State v. Pena*, supra, 301 Conn. 680; accord *State v. Huey*, supra, 199 Conn. 126. In *Pena*, we specifically concluded that, although we do not encourage the practice of commenting on acquitted conduct, it does not rise to the level of a constitutional violation. See *State v. Pena*, supra, 684. Similarly, in *Huey*, we determined that "[i]t is a fundamental sentencing principle that a sentencing judge may appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come." (Internal quotation marks omitted.) *State v. Huey*, supra, 127. The defendant cites no Connecticut authority, and we have found none, that stands for the proposition that consideration of acquitted conduct at sentencing amounts to a constitutional violation. This is particularly true when, as here, the sentence was within the permissible statutory range. Therefore, this factor also supports the state's position.

Persuasive federal precedent, the third *Geisler* factor, similarly lends strong support to the state's position. As we briefly discussed in part I of this opinion, the United States Supreme Court in *Watts* discussed the wide latitude afforded to sentencing judges in its conclusion that consideration of acquitted conduct did not raise double jeopardy concerns. See *United States v. Watts*, supra, 519 U.S. 151–55. The wide latitude afforded to sentencing judges predates *Watts* and has continued even in the wake of *Apprendi* and *Booker*, with every federal court of appeals[8] that has addressed the issue allowing trial courts to consider acquitted conduct at sentencing. See, e.g., *United States v. González*, 857 F.3d 46, 58 (1st Cir. 2017) ("a sentencing court may

consider relevant conduct that constitutes another offense, even if the defendant has been acquitted of that offense, so long as it can be proven by a preponderance of the evidence"); *United States* v. *Daugerdas*, 837 F.3d 212, 231 (2d Cir. 2016) ("a district judge can take into account acquitted conduct in determining a sentence"), cert. denied,     U.S.    , 138 S. Ct. 62, 199 L. Ed. 2d 20 (2017); *United States* v. *Ciavarella*, 716 F.3d 705, 735–36 (3d Cir. 2013) ("a jury's verdict of [not guilty] does not prevent the sentencing court from considering [acquitted] conduct . . . so long as that conduct has been proved by a preponderance of the evidence" (internal quotation marks omitted)), cert. denied, 571 U.S. 1239, 134 S. Ct. 1491, 188 L. Ed. 2d 378 (2014); *United States* v. *Grubbs*, supra, 585 F.3d 798–99 ("[the defendant's] argument is nullified by clear [United States] Supreme Court and Fourth Circuit precedent holding that a sentencing court may consider uncharged and acquitted conduct in determining a sentence, as long as that conduct is proven by a preponderance of the evidence"); *United States* v. *Gaspar-Felipe*, 4 F.4th 330, 343 n.11 (5th Cir. 2021) ("[the defendant's] argument that the [c]onstitution bars considering acquitted conduct during sentencing is foreclosed by [United States] Supreme Court precedent"), cert. denied,     U.S.    , 142 S. Ct. 903, 211 L. Ed. 2d 608 (2022); *United States* v. *Wandahsega*, 924 F.3d 868, 888 (6th Cir. 2019) ("the [D]istrict [C]ourt's consideration of acquitted conduct in sentencing passes constitutional muster . . . insofar as enhancements based on acquitted conduct do not increase a sentence beyond the maximum penalty provided by the United States Code" (internal quotation marks omitted)); *United States* v. *Rollerson*, 7 F.4th 565, 570 n.1 (7th Cir.) ("[t]he practice of considering acquitted conduct at sentencing is controversial but is clearly allowed if the conduct is proven by a preponderance of the evidence"), cert. denied,     U.S.    , 142 S. Ct. 631, 211 L. Ed. 2d 384 (2021); *United States* v. *Chambers*, 878 F.3d 616, 622 (8th Cir. 2017) ("[t]he [D]istrict [C]ourt may consider uncharged, dismissed, and even acquitted conduct at sentencing"); *United States* v. *Mercado*, 474 F.3d 654, 657 (9th Cir. 2007) ("[w]e are . . . satisfied that the core principle of *Watts* lives on and that the [D]istrict [C]ourt could constitutionally consider the acquitted conduct"), cert. denied, 552 U.S. 1297, 128 S. Ct. 1736, 170 L. Ed. 2d 542 (2008); *United States* v. *Todd*, 515 F.3d 1128, 1137 (10th Cir. 2008) ("[t]he [United States] Supreme Court and this circuit have both expressly held that acquitted conduct can be considered for purposes of sentencing" (emphasis omitted)); *United States* v. *Culver*, supra, 598 F.3d 752 ("[i]t is [well settled] that a sentencing court may consider conduct for which a defendant has been acquitted if the government proves the conduct in question by a preponderance of the evidence"); *United States* v. *Norman*, 926 F.3d 804, 811 (D.C. Cir. 2019) ("[t]his [c]ourt, and other courts of appeals, [has]

reached the conclusion that sentencing based on acquitted conduct is constitutional"), cert. denied,     U.S.     , 140 S. Ct. 2555, 206 L. Ed. 2d 489 (2020).

We acknowledge, however, that, although the courts of appeals allow the practice under federal law, many federal courts of appeals have been reluctant to do so and have expressed displeasure with the practice. See, e.g., *United States* v. *Bell*, 808 F.3d 926, 928 (D.C. Cir. 2015) (Kavanaugh, J., concurring in the denial of rehearing en banc) ("[a]llowing judges to rely on acquitted or uncharged conduct to impose higher sentences than they otherwise would impose seems a dubious infringement of the rights to due process and to a jury trial"); see also, e.g., *United States* v. *Norman*, supra, 926 F.3d 811 ("Justice [Antonin] Scalia wrote, in a dissent from [the] denial of certiorari joined by Justices [Clarence] Thomas and [Ruth Bader] Ginsburg, that [t]his has gone on long enough, and that the [United States] Supreme Court should take up the issue to put an end to the unbroken string of cases disregarding the [s]ixth [a]mendment—or to eliminate the [s]ixth [a]mendment difficulty by acknowledging that all sentences below the statutory maximum are substantively reasonable. . . . The Supreme Court has not yet done what Justice Scalia suggested. Therefore, we continue to recognize that [w]hatever the merits of Justice Scalia's argument, it is not the law." (Citation omitted; internal quotation marks omitted.)). Notwithstanding this criticism, federal precedent overwhelmingly supports the state's position that a judge may constitutionally consider acquitted conduct during sentencing.

The fourth *Geisler* factor directs us to consider the precedent of other states. Sister state precedent is divided into three primary categories.[9] First, numerous states permit sentencing courts to consider a wide range of conduct, including acquitted conduct or facts not established beyond a reasonable doubt, without running afoul of state or federal constitutional provisions. See, e.g., *People* v. *Towne*, 44 Cal. 4th 63, 85–86, 186 P.3d 10, 78 Cal. Rptr. 3d 530 (2008) ("[n]othing in the applicable statute or rules suggests that a [sentencing] court must ignore evidence related to the offense of which the defendant was convicted, merely because that evidence did not convince a jury that the defendant was guilty beyond a reasonable doubt of related offenses"); *People* v. *Jackson*, 149 Ill. 2d 540, 548, 599 N.E.2d 926 (1992) ("outstanding indictments or other criminal conduct for which there has been no prosecution or conviction may be considered in sentencing"), cert. denied, 507 U.S. 973, 113 S. Ct. 1416, 122 L. Ed. 2d 786 (1993); *State* v. *Longo*, 608 N.W.2d 471, 474–75 (Iowa 2000) ("There is no general prohibition against considering other criminal activities by a defendant as factors that bear on the sentence to be imposed. . . . We are convinced that a sentencing judge is not required to deviate from the judge's own characterization of the nature of

a crime committed based on sworn testimony simply because the jury has characterized the offense differently."); *State* v. *Jaco*, 156 S.W.3d 775, 780–81 (Mo.) ("[The] sentence was within the original, unenhanced range of punishment . . . . Therefore, any facts that would have tended to assess [the defendant's] punishment within this range were not required to be found beyond a reasonable doubt by a jury."), cert. denied, 546 U.S. 819, 126 S. Ct. 350, 163 L. Ed. 2d 60 (2005); *State* v. *McCrary*, 676 N.W.2d 116, 120 (S.D. 2004) ("[S]entencing courts may consider an extremely broad range of evidence . . . . This consideration may include inquiry into uncharged conduct or even conduct [of which the defendant] was acquitted." (Citation omitted; internal quotation marks omitted.)).

Second, a minority of states completely prohibit the consideration of acquitted conduct at sentencing. See, e.g., *State* v. *Koch*, 107 Haw. 215, 225, 112 P.3d 69 (2005) (sentencing court "did not have the discretion to consider alleged conduct of which [the defendant] was acquitted in sentencing him"); *People* v. *Beck*, 504 Mich. 605, 629, 939 N.W.2d 213 (2019) ("[W]e do not believe existing United States Supreme Court jurisprudence prevents us from holding that reliance on acquitted conduct at sentencing is barred by the [f]ourteenth [a]mendment. We hold that it is."), cert. denied, U.S.    , 140 S. Ct. 1243, 206 L. Ed. 2d 240 (2020).

Finally, other states prohibit consideration of acquitted conduct when it results in an aggravated or enhanced sentence. New Jersey is one example. In *State* v. *Melvin*, 248 N.J. 321, 258 A.3d 1075 (2021), the Supreme Court of New Jersey considered claims under the federal and New Jersey constitution. See id., 339. The court held that principles of fundamental fairness underlying the state constitutional right to due process prohibited trial courts from subjecting a defendant to enhanced sentencing for conduct of which the defendant was acquitted. See id., 326, 347–49; see also *State* v. *Marley*, 321 N.C. 415, 425, 364 S.E.2d 133 (1988) ("[t]o allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself").

Other state precedent is divided in its practices, and this divide is further complicated by the variety of each state's sentencing schemes. As discussed in part I of this opinion, Connecticut sentencing practices confine sentencing judges to statutory ranges for each conviction. Other states utilize guideline approaches or give sentencing judges more latitude to increase sentences based on aggravating factors or other subjective considerations. Those jurisdictions raise constitutional concerns that are not present here and, therefore, make it difficult to glean guidance from their decisions. Accord-

ingly, we conclude that this factor is neutral.

The fifth *Geisler* factor instructs us to look to the historical insights and intent of the framers regarding the rights at issue.[10] The right to trial by jury has remained consistent from the enactment of the 1818 Connecticut constitution, which declared that "[t]he right of trial by jury shall remain inviolate." Conn. Const. (1818), art. I, § 21.[11] This court has long held that the trial by jury described in the Connecticut constitution is "the same in its essential features as the jury trial at common law, which had been adopted by the [c]onstitution of the United States and by the constitutions of other [s]tates." *State* v. *Gannon*, 75 Conn. 206, 226, 52 A. 727 (1902). Even prior to 1818, in 1672, Connecticut colonial laws called for "a special verdict [on] which the court shall declare the law in accordance with English practice, guarantee[d] to all persons tried for life or banishment a jury of twelve whose verdict must be unanimous . . . define[d] the duty of juries in accordance with the settled doctrine of the common law [as] . . . a jury of twelve . . . who shall find the matter of fact . . . and [stated that] the judges shall declare the sentence, or direct the jury to find according to the law." (Emphasis omitted; internal quotation marks omitted.) Id., 228. The respective roles of the jury and the judge as finder of fact and arbiter of law have remained consistent in this state over centuries. "[T]he jury trial provisions in the [f]ederal and [s]tate [c]onstitutions reflect a fundamental decision about the exercise of official power—a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges." (Internal quotation marks omitted.) *State* v. *Griffin*, 251 Conn. 671, 739, 741 A.2d 913 (1999) (*Berdon, J.*, dissenting). The right to a trial by jury and the right to have a jury find all necessary facts are deeply rooted in our history. Equally deeply rooted, however, is the role of the judge as the sole party to impose a sentence. "[B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." *Williams* v. *New York*, supra, 337 U.S. 246. In these instances, the scope of the sentencing court's authority is curtailed by the jury's verdict. This factor demonstrates that our state constitutional right to trial by jury has developed in a similar manner to its federal counterpart. Accordingly, there is nothing in the historical insights or in the intent of the framers to suggest that there is greater weight afforded to the right to trial by jury under our state constitution than under the federal constitution. Although the historical insight strongly emphasizes the respective roles of judge and jury, we see no infringement on those roles when the judge is confined to sentencing within a range author-

ized by the jury's verdict and limited by statute.

The sixth and final *Geisler* factor asks us to consider contemporary norms and public policy. The defendant argues that there are several public policy concerns at issue in this appeal, namely, that allowing sentencing judges to consider acquitted conduct undermines the jury's role and gives the prosecution a "second bite at the apple" without affording the defendant the same procedural safeguards as at trial. The defendant contends that the combination of these two concerns and the general concern that this acts as a form of " 'judge nullification' " of the jury's verdict undermines important public policy regarding the jury's important role as a "check on state power." The state counters that the sentencing court's consideration of acquitted conduct does not undermine the role of the jury because, "[i]f the court considers conduct proven by a lesser standard of proof than the jury applied, it does not find facts contrary to any findings necessarily [inherent in] the verdict." The state further argues that discouraging sentencing judges from considering as much information as possible may limit the thoroughness of the sentencing procedures and "frustrate the broad inquiry that sentencing is supposed to entail . . . ."

We agree with the defendant that the sanctity of the role of the jury should never be infringed on. Although the law largely supports the state's position, there is a modern push to prohibit the practice of considering acquitted conduct during sentencing. See A.B.A., Standards for Criminal Justice: Sentencing (3d Ed. 1994) standard 18-6.5 (a), p. 230 ("[a] sentencing court should impose a sanction appropriate to the offense of conviction and should not consider other offenses . . . of which the defendant was acquitted"). Commentators have expressed the concern that "the civic value of jury service suffers" when judges are permitted to put aside the product of a jury's fact-finding, an event "likely to engender consternation among the public." J. Bilsborrow, Note, "Sentencing Acquitted Conduct to the Post-*Booker* Dustbin," 49 Wm. & Mary L. Rev. 289, 333 (2007). "To work effectively, it is important that society's criminal process satisfy the appearance of justice," in addition to producing just results. (Internal quotation marks omitted.) *Richmond Newspapers, Inc.* v. *Virginia*, 448 U.S. 555, 571–72, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980) (plurality opinion). These contemporary public policy concerns weigh in favor of the defendant's arguments.

The six *Geisler* factors, in totality, lead us to the conclusion that our state constitution does not prohibit the consideration of acquitted conduct at sentencing when the sentence is within the statutory range for the convicted offenses and the information relied on has a "minimal indicium of reliability." *State* v. *Huey*, supra, 199 Conn. 127. In sum, the first, second, and third factors weigh heavily in favor of our conclusion. The fourth

factor, regarding other state precedents, does not strongly favor either the defendant's or the state's arguments. The fifth factor helps us glean important principles from the origins of our constitution and favors the state's arguments that our state constitution grants the same rights as the federal constitution. The sixth factor, which demonstrates modern concerns about the practice of considering acquitted conduct, militates in favor of the defendant's arguments. On balance, however, the factors in favor of the state's arguments outweigh the concerns embodied within the sixth factor. Here, the defendant's case was tried to the jury, the jury returned its verdict, and the sentence imposed was in fact below the maximum statutory sentence applicable to the counts of conviction. Notwithstanding the comments made by the sentencing judge, the jury's verdict is what determined the permissible ranges, and the defendant's sentence fell within those ranges.

## III

### SUPERVISORY AUTHORITY

The defendant next argues that, even if we conclude that a trial court's consideration of acquitted conduct during sentencing does not amount to a constitutional violation, we should exercise our supervisory authority to impose a rule prohibiting the practice in order to remedy a perceived injustice. The state argues that we should follow our precedent in *Pena* and again decline to exercise our supervisory authority, as the exercise of that authority would frustrate the ability of sentencing courts to consider a broad range of conduct in determining an appropriate sentence.

"It is well settled that [a]ppellate courts possess an inherent supervisory authority over the administration of justice." (Internal quotation marks omitted.) *State* v. *Rose*, 305 Conn. 594, 607, 46 A.3d 146 (2012). "Under our supervisory authority, we have adopted rules intended to guide the lower courts in the administration of justice in all aspects of the criminal process. . . . The exercise of our supervisory powers is an extraordinary remedy to be invoked only when circumstances are such that the issue at hand, [although] not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Lockhart*, 298 Conn. 537, 576, 4 A.3d 1176 (2010).

We previously declined to exercise our supervisory authority to overrule *Huey* and to create a rule prohibiting consideration of acquitted conduct at sentencing in *Pena*. See *State* v. *Pena*, supra, 301 Conn. 683–84. We agreed with our previous analysis in *Huey* that it is not the province of our appellate courts to interfere with the discretion of sentencing judges, so long as they

have reasonable and persuasive bases for relying on the information they choose. Id., 682; see also *State* v. *Huey*, supra, 199 Conn. 127.

We continue to agree with that rationale. To limit the information that sentencing judges may rely on does not provide any benefit under our state sentencing system. Under our system, sentencing judges are not required, or even permitted, to make findings of fact relating to aggravating factors, or other factors that may increase or decrease a sentence outside the statutory range. See General Statutes §§ 53a-28 and 53a-35a. Rather, our penal code gives judges wide latitude within an established statutory range for each of the offenses of which the defendant has been convicted. See General Statutes §§ 53a-28 and 53a-35a; see also, e.g., *State* v. *Johnson*, supra, 316 Conn. 40. In determining the proper sentence within that range, the judge has authority, under our case law, to consider any evidence that has a "minimal indicium of reliability." *State* v. *Huey*, supra, 199 Conn. 127. So long as the evidence considered rises to the requisite standard, the court's consideration of it comports with due process, and the sentence is within the statutory range, we do not believe it is appropriate to interfere with a trial court's discretion in determining a proper sentence. To do so would serve no beneficial purpose and, instead, would encourage sentencing judges to keep their thoughts and reasons for imposing a particular sentence to themselves, rather than articulating them on the record. This would, in turn, prevent appellate courts from remedying those instances in which a sentencing judge does indeed rely on information that is unreliable, inaccurate, or patently wrong, therefore falling short of a minimal indicium of reliability. We do not wish to dissuade sentencing judges from articulating a full and transparent basis for the sentence on the record.

Notwithstanding our decision not to exercise our supervisory authority, we emphasize that sentencing judges should undertake every effort to refrain from basing a sentence on facts that cast doubt, either directly or indirectly, on any aspect of the jury's verdict. See *State* v. *Pena*, supra, 301 Conn. 684. This practice undermines many of our foundational principles regarding the critical role of the jury in our system of justice and the trust we place in the jury's verdict. Many courts and scholars have expressed similar concerns about the consideration of acquitted conduct at sentencing. Although, as we explained, federal courts, bound by decades of precedent, continue to utilize the practice, many have expressed displeasure with it. See, e.g., *United States* v. *Brown*, 892 F.3d 385, 415 (D.C. Cir. 2018) (Kavanaugh, J., dissenting in part) ("there are good reasons to be concerned about the use of acquitted conduct at sentencing, both as a matter of appearance and as a matter of fairness"); Id., 409 (Millett, J., concurring) ("lumping acquitted conduct in with those tradi-

tional factors and then using that acquitted conduct to single a defendant out for distinctively severe punishment—an above-[g]uidelines sentence—renders the jury a sideshow" (emphasis omitted)); *United States* v. *Canania*, 532 F.3d 764, 778 (8th Cir.) (Bright, J., concurring) ("I wonder what the man on the street might say about this practice of allowing a prosecutor and judge to say that a jury verdict of 'not guilty' for practical purposes may not mean a thing"), cert. denied, 555 U.S. 1037, 129 S. Ct. 609, 172 L. Ed. 2d 466 (2008), and cert. denied sub nom. *Robinson* v. *United States*, 555 U.S. 1116, 129 S. Ct. 938, 173 L. Ed. 2d 139 (2009).

Scholars and commentators harbor similar concerns regarding the appearance and fairness of the practice. See, e.g., B. Johnson, "The Puzzling Persistence of Acquitted Conduct in Federal Sentencing, and What Can Be Done About It," 49 Suffolk U. L. Rev. 1, 25 (2016) ("[t]he use of acquitted conduct has been characterized as, among other things, '[Kafkaesque], repugnant, uniquely malevolent, and pernicious' . . . 'mak[ing] no sense as a matter of law or logic,' and . . . a 'perver-[sion] of our system of justice,' as well as 'bizarre' and 'reminiscent of Alice in Wonderland' " (footnotes omitted)); E. Ngov, "Judicial Nullification of Juries: Use of Acquitted Conduct at Sentencing," 76 Tenn. L. Rev. 235, 242 (2009) ("[c]onsideration of acquitted conduct by a judge after a jury has already deliberated sends a message that the work of the jury was unnecessary and, in turn, threatens to undermine the role the jury serves and advantages it provides over judicial fact-finding"). Although these concerns are valid, and weigh in favor of great caution, we are not persuaded that they warrant the extraordinary remedy contemplated by the exercise of our supervisory authority.

In sum, we encourage sentencing judges to be thoughtful regarding the information they utilize when sentencing a defendant and mindful of the way the reasoning that underlies the sentence is conveyed during sentencing proceedings. We find no fault in judges who wish to consider the full context of the offense of which the defendant was convicted and, in fact, encourage the practice. In doing so, however, it is neither necessary nor appropriate for the judge to express or imply his or her disagreement with the jury's verdict. Such a practice may harm public confidence in the fairness of our judicial system and undermine the importance of the jury's role in fair adjudications. In this case, although we cannot conclude that the sentencing judge's declarative statement that the victim "was shot in the back of both legs by the defendant" was unconstitutional or illegal, we believe that it was imprudent. Certainly, the sentencing judge could have explained that the sentence was intended to reflect the fact that the defendant was directly involved in a dangerous and violent robbery that resulted in the shooting of the victim, with serious and permanent consequences, but that is far different

from the judge's affirmative declaration that the defendant had committed the assault of which he was acquitted. A measure of circumspection by the sentencing judge would not only have resulted in a legal sentence, but would have left no doubt that the sentence was wholly in accord with the jury's verdict and reflected the seriousness of the crimes of which the defendant was found guilty. As we have stated before, "allowing a trial court to comment on and express disagreement with a jury verdict during the sentencing of a defendant may improperly call into question the jury's verdict. Indeed, it has been recognized that a judge's comments in disagreement with a jury verdict may undermine public confidence in the jury system. See A.B.A., Standards for Criminal Justice: Sentencing [supra, standard 18-3.6, commentary, pp. 65–69]." *State* v. *Pena*, supra, 301 Conn. 684.

## CONCLUSION

The sentencing court's consideration of conduct underlying charges of which the defendant was acquitted did not violate his rights under the sixth and fourteenth amendments to the United States constitution, or under article first, §§ 8 and 19, of our state constitution. We reach this conclusion because the underlying conduct and evidence considered by the sentencing court had a "minimal indicium of reliability" and because the sentence imposed was within the permissible statutory range for the convictions. Furthermore, we decline to exercise our supervisory authority to prohibit consideration of acquitted conduct at sentencing, as we believe the negative ramifications of such a rule outweigh any benefit. Nonetheless, we discourage sentencing courts from expressing disbelief or disagreement with the jury's verdict and using that disbelief or disagreement as a basis for crafting a sentence.

The trial court's denial of the defendant's motion to correct an illegal sentence is affirmed.

In this opinion the other justices concurred.

[1] The sentencing court also took judicial notice of a ten year sentence—imposed for a separate conviction by a different court the day prior—and ordered the sentences in the present case to run consecutively to that ten year sentence.

[2] The defendant did not raise a claim under article first, § 19, of the Connecticut constitution in his operative motion to correct an illegal sentence. The state, however, does not argue that the claim is unpreserved or unreviewable. Given that the claim, regardless of its preservation, would be reviewable under the principles set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), we address it on the merits.

[3] The sixth amendment right to a trial by jury is made applicable to the states through the due process clause of the fourteenth amendment to the United States constitution. See, e.g., *Duncan* v. *Louisiana*, 391 U.S. 145, 148–49, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968).

[4] We note that the United States Supreme Court is currently reviewing five petitions for writs of certiorari on related questions surrounding the constitutionality of a sentencing court's consideration of conduct that a jury did not find beyond a reasonable doubt, including acquitted conduct. See *United States* v. *Bullock*, 35 F.4th 666 (8th Cir. 2022), petition for cert. filed (U.S. October 14, 2022) (No. 22-5828); *United States* v. *Karr*, Docket No.

21-50219, 2022 WL 1499288 (5th Cir. May 12, 2022), petition for cert. filed (U.S. August 15, 2022) (No. 22-5345); *United States* v. *Shaw*, Docket No. 18-50384, 2022 WL 636639 (9th Cir. March 4, 2022), petition for cert. filed (U.S. August 8, 2022) (No. 22-118); *United States* v. *Bravo*, 26 F.4th 387 (7th Cir. 2022), petition for cert. filed sub nom. *Luczak* v. *United States* (U.S. June 21, 2022) (No. 21-8190); *United States* v. *McClinton*, 23 F.4th 732 (7th Cir. 2022), petition for cert. filed (U.S. June 14, 2022) (No. 21-1557).

[5] Section 3661 of title 18 of the United States Code codifies the "[long-standing] principle that sentencing courts have broad discretion to consider various kinds of information." *United States* v. *Watts*, supra, 519 U.S. 151. The current statute provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661 (2018).

[6] The defendant does not claim that the information on which the trial court relied to craft the sentence was false, inaccurate, or misleading. See, e.g., *United States* v. *Tucker*, 404 U.S. 443, 447, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972) (recognizing that sentence cannot be founded on "misinformation of constitutional magnitude"); *Townsend* v. *Burke*, 334 U.S. 736, 741, 68 S. Ct. 1252, 92 L. Ed. 1690 (1948) (sentence based on "materially false" information is "constitutionally invalid"); see also *State* v. *Huey*, supra, 199 Conn. 127 (recognizing that, "[a]s a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability").

[7] Although *Huey* did not address the precise question of the consideration of acquitted conduct during sentencing, in discussing the broad range of information a sentencing court may consider, it cited to *Sweig* in support of the proposition that acquitted conduct was included in such a range. See *State* v. *Huey*, supra, 199 Conn. 126.

[8] The United States Court of Appeals for the Federal Circuit is the only court of appeals that has not addressed the issue, as it does not have criminal jurisdiction. See 28 U.S.C. § 1295 (2018).

[9] New Hampshire is a unique jurisdiction that does not squarely fit into any of the categories. In 1987, the New Hampshire Supreme Court prohibited the consideration of acquitted conduct to justify enhanced sentencing. See *State* v. *Cote*, 129 N.H. 358, 373, 376, 530 A.2d 775 (1987). However, the same court, in 2008, concluded that the consideration of acquitted conduct as the basis for restoring a suspended sentence was permissible. See *State* v. *Gibbs*, 157 N.H. 538, 542, 953 A.2d 439 (2008). Vermont similarly diverges from the categories and prohibits the practice only when the defendant does not receive notice and an opportunity to be heard regarding the acquitted conduct. See *State* v. *Koons*, 189 Vt. 285, 286, 20 A.3d 662 (2011); see also id., 292 ("the trial court's reliance . . . on *undisclosed* acquitted conduct" was plain error (emphasis added)).

[10] Our research reveals little, relevant historical insight regarding the right to due process in this context. Additionally, neither party provided briefing on the historical insights of article first, § 8, of the Connecticut constitution. Therefore, we confine our discussion under the fifth factor to the historical insights as they relate to the right to trial by jury under article first, § 19, of our state constitution.

[11] The right to trial by jury in the 1818 constitution was contained in article first, § 21. The 1965 constitution retained the language of the right but relocated it to article first, § 19, where it currently remains.

---